# In the United States District Court for the District of Columbia

| | |
|---|---|
| **United States of America** )<br>)<br>    v. )<br>)<br>**Joseph Padilla,** )<br>**a/k/a "Jose Padilla"** )<br>)<br>    **Defendant.** ) | **Criminal No. 1:21-CR-214** |

### DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

Joseph Padilla, through counsel moves to revoke the order of detention imposed by Magistrate Judge Zia M. Faruqui on March 31, 202, pursuant to 18 U.S.C. § 3145(b),. Mr. Padilla also requests an expedited hearing of this matter pursuant to 18 U.S.C. § 3145(b), which requires that such motions be determined "promptly."

### Procedural Posture

Based on the events of January 6, 2021, the government has charged Mr. Padilla with:

- Assaulting, Resisting, or Impeding Certain Officers, (18 U.S.C. § 111(a)(1))
- Civil Disorder, (18 U.S.C. § 231(a)(3))
- Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, (18 U.S.C §111(a)(1) and (b));
- Obstruction of an Official Proceeding and Aiding and Abetting, (18 U.S.C §1512(c)(2) and 2)
- Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, (18 U.S.C §1752(a)(1) and (b)(1)(A));
- Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, (18 U.S.C. §1752(a)(2) and (b)(1)(A));
- Engaging in Physical Violence in a Restricted Building or Grounds with a Dangerous or Deadly Weapon, (18 U.S.C. § 1752(a)(4) and (b)(1)(A));
- Disorderly Conduct in the Capitol Grounds or Buildings, (40 U.S.C. § 5104(e)(2)(D)); and
- Act of Physical Violence in the Capitol Grounds or Buildings, (40 U.S.C. §5104(e)(2)(F)).

Mr. Padilla was arrested at his home in Cleveland, Tennessee on February 23, 2021 and detained until his detention hearing in Washington, D.C. on March 31. On that date, Magistrate Zia Faruqui found that Mr. Padilla was not a flight risk but did pose a danger to the community. The Court granted the government's motion for detention.

There is no dispute that this case involves serious allegations. However, Mr. Padilla respectfully submits that stringent release conditions will both assure his appearance in court and the safety of the community.

## **Legal Standard**

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment to the order" with "the court having original jurisdiction over the offense." 18 U.S.C. 3. Every circuit to consider the issue has found that a magistrate judge's detention order is subject to de novo review. *See United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017) (referencing cases from the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits that support this proposition). This Court has adopted this view*, see United States v. Loualle*n, 2019 WL 1003531, at *1 (D.D.C. Feb. 27, 2019) (Bates, J.),

As the Supreme Court has emphasized, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, the Bail Reform Act, and specifically 18 U.S.C. §§ 3142(a) and (b), requires that a person charged with an offense be released on personal recognizance or upon execution of an unsecured bond unless further conditions are necessary to reasonably assure attendance at trial and the safety of the community. Under circumstances in which a personal recognizance bond is insufficient, a judicial officer must impose "the least restrictive further condition, or combination of conditions, that such judicial officer determines

will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).  In other words, the Court must consider all reasonable less restrictive alternatives to detention.  *See* 18 U.S.C. § 3142(e)(1).

**Argument**

In seeking review of the magistrate judge's detention order, Mr. Padilla respectfully submits that the facts support his release.  He requests release under restrictive conditions, given evidence that he is neither a flight risk nor a danger to the community.

In finding Mr. Padilla to represent a danger, Magistrate Judge Faruqui relied on the D.C. Court of Appeals decision in *United States v. Munchel*, No. 21-3010, 2021 WL 1149196 (D.C. Cir. Mar. 26, 2021), decided less than one week prior to Mr. Padilla's hearing.  The *Munchel* Court does distinguish those alleged to have committed acts of violence (*Munchel* at *8), but that is not the end of the Court's inquiry.  Like the defendant in *U.S. v. Klein*, Padilla's "actions may place in him in the former category, but just barely—his conduct does not approach the high end of the spectrum of violence that occurred and was threatened that day." *United States v. Federico Klein*, 1:21-cr-236-JDB, ECF no. 29 at 22 (D.D.C. April 12, 2021).  For efficiency's sake, Mr. Padilla will structure his argument around the framework set out by this Court in its Memorandum Opinion in *Klein*.

   1. *Circumstances of the Allegations*

This Court has previously evaluated the allegations in the detention context according to the criteria set out in *United States v. Chrestman*, -- F. Supp. 3d --, 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021) (Howell, C.J.).  *See Klein* at 13.  In *Chrestman*, the Court considered whether a defendant:

   (1) "has been charged with felony or misdemeanor offenses;"

3

(2) "engaged in prior planning before arriving at the Capitol;"

(3) carried or used a dangerous weapon during the riot;

(4) "coordinat[ed] with other participants before, during, or after the riot;" or

(5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct;" and

(6) the nature of "the defendant's words and movements during the riot," including whether he "damaged federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot."

*Chrestman* at *7–8.

Similar to Mr. Klein, Mr. Padilla is accused of felonious conduct and using a dangerous weapon on January 6, 2021. Mr. Padilla did not bring a weapon to the Capitol grounds on January 6. He does not own a firearm. *See* Pretrial Services Report for Joseph Padilla in 1:21-mj-34 (E.D. Tenn.), hereinafter "E.D. Tenn. PTS Report". The two allegations of using a weapon are (1) when a large sign was being carried by a crowd and used to push the police barricades forward, Mr. Padilla looked above his head, placed his hand on the sign, and pushed forward with the crowd (*see* Detention H'ring, govt. Ex. 6); and (2) picking up a pole of some kind and throwing it in the direction of where officers and protestors were engaged (*see* Detention H'ring, govt. Exs. 7, 8). The pole subsequently slid to the ground. The government also alleges that Mr. Padilla put his hands on and attempted to push a police barricade. Mr. Padilla does not contest the seriousness of these allegations nor that such allegations have the potential to injure. However, they are distinguishable from those defendants striking officers directly with dangerous objects, repeatedly and at close range.

4

Again similar to Mr. Klein, there is no evidence that Mr. Padilla engaged in planning, coordinated with others, or assumed a de facto leadership position. While the government contends that Mr. Padilla was yelling at others - "push"; "let's go"; and "come on" (ECF No. 4 at 3-4), if true, these statements "hardly establish that [Padilla] was a de factor leader of the mob." *Klein* at 14. Moreover, the government's exhibits are clear that other individuals are not following Mr. Padilla or treating him as a leader in any way. (*See* Detention H'ring, govt. Exs. 4, 5).

Finally, unlike Mr. Klein, Mr. Padilla never entered the Capitol building on January 6. He left the grounds and returned to Tennessee the following day.

2. *Weight of the Evidence*

As in *Klein*, much of the evidence against Mr. Padilla is video footage. For the purposes of this motion, Mr. Padilla concedes the evidence weighs against release but reiterates it is "the least important" factor. *Klein* at 18 (citing *United States v. Gebro*, 948 F.2d 1118, 1121–22 (9th Cir. 1991)).

3. *History and Characteristics of the Defendant*

Mr. Klein and Mr. Padilla have certain characteristics in common. Both served their country in Iraq. *Klein* at 19; E.D. Tenn. PTS Report. Neither was an organizer of the January 6 events. Neither brought weapons to the Capitol. Neither injured an officer or destroyed federal property.

In certain ways, of course, the men differ. After the Iraq War, Mr. Padilla returned to Cleveland, Tennessee. He does not have the political connections of Mr. Klein; he was not appointed by the President to a State Department post. He was diagnosed with Posttraumatic Stress Disorder and received Disability benefits from the Department of Veterans' Affairs and

5

Social Security Administration. E.D. Tenn. PTS Report.  Another distinction is that prior to January 6, Mr. Padilla had no criminal record – while Mr. Klein did have some criminal justice contact. *Id.*

Mr. Padilla is a stay-at-home dad to his three sons – managing the house while his wife is at work, picking the boys up from school, and watching them throughout the afternoon and early evening.  Describing Mr. Padilla as unemployed (*see* government's Memorandum in Support of Pretrial Detention, ECF no. 4 at 7) diminishes both Mr. Padilla's role as a stay-at-home dad while his wife works as a librarian and his military services resulting in his disability.  Mr. Padilla does not drink alcohol or abuse drugs. E.D. Tenn. PTS Report.

On January 14, 2021, F.B.I. agents arrived at Mr. Padilla's home.  He spoke to them, and they left.  Fully aware he was under investigation, Mr. Padilla spoke to an attorney.  He did not flee.  He did not destroy evidence.  He did not stoke resistance online.  Until his arrest five weeks later, Mr. Padilla continued to pick up his children and manage the family home.

    4.  *Nature and seriousness of the danger*

The *Munchel* Court requires that a defendant must pose "an articulable threat to the community in view of their conduct on January 6, and the particular circumstances of January 6." *Munchel* at *8.  The Court specifies that "[i]t follows that whether a defendant poses a particular threat depends on the nature of the threat identified and the resources and capabilities of the defendant." *Id.* at *7.  The Court uses the example of the threat of dealing drugs depending "on the defendant's past experience dealing." *Id.*

The *Munchel* Court's analysis is designed to distinguish actual dangers from speculative ones – real threats from individuals like Mr. Padilla.  Using the *Munchel* Court's analysis and a review of Mr. Padilla's history, he poses no potential threat to the community.

First, Mr. Padilla had no experience with unlawful violence, civil disobedience, or resisting authority in any way prior to January 6, 2021. As is clear from the Pretrial Services report, Mr. Padilla has no criminal record in his forty years. E.D. Tenn. PTS Report. Indeed, the January 6 allegations are the first he has ever faced. His current incarceration is his first. Similar to Klein, Mr. Padilla did not threaten or injure officers that day. He does not own a firearm. E.D. Tenn. PTS Report. The events of that day – the only circumstances under which Mr. Padilla has ever been charged with a crime – required a massive confluence of events: calls by the President[1] and other politicians to march on the Capitol on January 6; large-scale social media efforts by alt-right groups such as the Oath Keepers and the Proud Boys[2]; and the turnout of thousands of other individuals[3]. The *Munchel* Court called the circumstances that day a "unique opportunity to obstruct democracy on January 6 because of the electoral college vote tally taking place that day, and the concurrently scheduled rallies and protests." *Munchel* at *8. The circumstances were unprecedented at the time and are unlikely to occur again; even if they were to reoccur, the Court can fashion restrictions that would prevent Mr. Padilla from participating.

Indeed, the evidence indicates Mr. Padilla poses no threat to the community. The District of Columbia Pretrial Services Report assess him as a low risk or rearrest as well as a low risk of flight. Mr. Padilla did not make any threats of violence before January 6 and has not made any

---

[1] Savage, Charlie, *Incitement to Riot? What Trump Told Supporters Before Mob Stormed Capitol*, The New York Times (Updated Jan. 12, 2021), available at: https://www.nytimes.com/2021/01/10/us/trump-speech-riot.html.

[2] Rebecca Heilweil and Shirin Ghaffary, *How Trump's internet built and broadcast the Capitol insurrection*, The New York Times (updated Jan. 8, 2021), available at: https://www.vox.com/recode/22221285/trump-online-capitol-riot-far-right-parler-twitter-facebook.

[3] Bump, Philip, *When did the Jan. 6 rally become a march to the Capitol?*, The Washington Post (Feb. 10, 2021), available at: https://www.washingtonpost.com/politics/2021/02/10/when-did-jan-6-rally-become-march-capitol/.

since. The government has demonstrated through its filings that it has thoroughly examined Mr. Padilla's social media. *See* ECF no. 4 at 3; Detention H'ring, govt. Ex. 9. From January 6 to his arrest on February 23, Mr. Padilla made no threats or suggestions of any civil disobedience or resisting authority. When Congress subsequently certified President-Elect Biden's victory, Mr. Padilla did not propose civil unrest or make threats. When President Biden was sworn in, Mr. Padilla did not propose civil unrest or make threats. When the F.B.I. appeared at his home to question him, Mr. Padilla did not propose civil unrest or make threats. Congress has continued to pass the new administration's legislation and confirm its political appointees. Mr. Padilla has not proposed civil disorder or violence. After his arrest, there have been no jail calls, court outbursts, or other evidence of any potential threats by Mr. Padilla. The government cannot articulate any concrete "threat," now that "the transition [of power] has come and gone." *See Munchel*, 2021 WL 1149196, at *10 (Katsas, J., concurring in part and dissenting in part).

In *Klein*, this Court noted the numerous defendants whose releases the government has not opposed. The government does not articulate why Mr. Padilla – with no criminal history – presents a danger where these defendants do not.

### **Release Conditions**

If released, Mr. Padilla would return to his wife and children in Tennessee, where he has never faced criminal allegations. He would obey any Court orders regarding home detention, computer monitoring, and avoidance of political activities or gatherings. These conditions would eliminate any potential concerns that this Court or the government might have. Further, nothing about Mr. Padilla's history suggests an unwillingness or inability to follow orders of the court or conditions of release. His time would largely be occupied by raising his three boys.

Counsel has regularly been in touch with Mr. Padilla's wife since Mr. Padilla's arrival in Washington. Before Mr. Padilla's initial detention hearing Mrs. Padilla proposed options for his return to Cleveland, Tennessee if released – her driving to pick up Mr. Padilla in Washington, D.C. or buying him a plane ticket. These options, as well as a one-way rental car or bus ticket, remain options both for his return upon release and to all future court dates.

### **Conclusion**

In sum, this is not a case where detention is required under the provisions of the Bail Reform Act. Pretrial release conditions are more than sufficient to safeguard the community and ensure that Mr. Padilla appears in Court.

WHEREFORE, Mr. Padilla respectfully requests that this Court revoke the order of detention previously imposed, or set this matter for an expedited hearing to consider the bond determination in this matter, and set appropriate conditions of release.

Respectfully submitted,

\_\_\_/s/_____
Nathaniel Wenstrup,
Attorney for Joseph Padilla
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: 703.600.0849
Fax: 703.600.0880
Nate_Wenstrup@fd.org

## CERTIFICATE OF SERVICE

      I hereby certify that on April 15, 2021, I will electronically file the foregoing pleading with the Clerk of the Court and will provide a copy of that filing to counsel of record.

                                              /s/
                             Nathaniel Wenstrup
                             Attorney for Joseph Padilla
                             Office of the Federal Public Defender
                             1650 King Street, Suite 500
                             Alexandria, Virginia 22314
                             Telephone: 703.600.0849
                             Fax: 703.600.0880
                             Nate_Wenstrup@fd.org