## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-cr-00214 (JDB)** |
| | : | |
| **JOSEPH LINO PADILLA,** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' MEMORANDUM IN SUPPORT OF
### AUGUST 25, 2021 ORAL MOTION TO CONTINUE TRIAL AND
### TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

At a status hearing held on August 25, 2021, the United States of America moved this Court for a 60-day continuance of the above-captioned proceeding, and further to exclude the time within which a trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*. (the "STA"), on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).

In support of its motion, the government states as follows:

### FACTUAL BACKGROUND

The defendant is charged via indictment with ten felony and two misdemeanor offenses arising out of his conduct in connection with the attack on the U.S. Capitol on January 6, 2021 (the "Capitol Breach").   These offenses include three separate assaults on federal officers (two with weapons), obstruction of law enforcement officers engaged in the performance of their official duties, obstruction of an official proceeding, and trespass.   The defendant is facing up to 104 years in prison, including three offenses which each carry a statutory maximum penalty of twenty years.

The defendant was arrested approximately six months ago, on February 23, 2021, and has been detained since his arrest.   For the reasons set forth in the Court's opinion entered May 4, 2021 (ECF No. 24), there is clear and convincing evidence that the defendant poses an articulable prospective threat to public safety.

The government has provided defense counsel with significant case-specific discovery including videos and interviews, as outlined in five discovery notices filed with the Court between April 15, 2021, and June 4, 2021.   *See* ECF Nos. 16, 26-29.

On July 12, 2021, the government filed a memorandum regarding the status of discovery (ECF No. 30), incorporated herein by reference. On August 24, 2021, the government filed a memorandum regarding the status of discovery (ECF No. 31), incorporated herein by reference. Collectively, these documents are referred to as our "Status Memoranda." The Status Memoranda largely pertained to the production of discovery from voluminous sets of data that the government collected in its investigation of the Capitol Breach cases, among which may be interspersed information the defense may consider material or exculpatory.[1]

## ARGUMENT

In brief, it is the government's commitment to ensuring that all arguably exculpatory materials are produced in a comprehensive, accessible, and useable format that, in the main, underlies the government's request to toll the STA.

---

[1] The materials upon which the Status Memoranda focused include, for example, thousands of hours of video footage from multiple sources (e.g., Capitol surveillance footage, body-worn-camera footage, results of searches of devices and Stored Communications Act ("SCA") accounts, digital media tips, Parler video, and unpublished news footage), and hundreds of thousands of investigative documents including but not limited to interviews of tipsters, witnesses, investigation subjects, defendants, and members of law enforcement.

I.      **The Government's Approach to Discovery is Intended to Ensure that All Arguably Exculpatory Materials are Produced in a Comprehensive, Accessible, and Useable Format.**

As a preliminary matter to the government's motion, the government's approach to the production of voluminous discovery, as elaborated in our previously filed Status Memoranda, is consistent with the *Recommendations for Electronically Stored Information (ESI) Discovery Production* developed by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System.[2]   It is also the generally accepted approach in cases involving voluminous information.   Notably, every circuit to address the issue has concluded that, where the government has provided discovery in a useable format, and absent bad faith such as padding the file with extraneous materials or purposefully hiding exculpatory material within voluminous materials, the government has satisfied its *Brady*[3]obligations.   *See United States v. Yi*, 791 F. App'x 437, 438 (4th Cir. 2020) ("We reject as without merit Yi's argument that fulfillment of the Government's obligation under *Brady* requires it to identify exculpatory material."); *United States v. Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) (noting that the "government's duty to disclose generally does not include a duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence") (internal citations omitted); *United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) ("We have previously rejected such 'open file' *Brady* claims where the government provided the defense with an electronic and searchable database of records, absent some showing that the government acted in bad faith or used the file to obscure exculpatory material."); *United States v.*

---

[2]  *See https://www.justice.gov/archives/dag/page/file/913236/download.*

[3]  *Brady v. Maryland*, 373 U.S. 83 (1963).

3

*Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("The government is not obliged to sift fastidiously through millions of pages (whether paper or electronic). . . [and] is under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence.") (quotation marks and citations omitted); *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) (rejecting *Brady* claim on the ground that the defendant "points to no authority requiring the prosecution to single out a particular segment of a videotape, and we decline to impose one"); *United States v. Warshak,* 631 F.3d 266, 297 (6th Cir. 2010) ("As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence"); *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009)(same), aff'd in part, vacated in part, remanded, 561 U.S. 358 (2010); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) ("*Brady* and its progeny . . . impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed."); *United States v. Jordan,* 316 F.3d 1215, 1253-54 (11th Cir. 2003) (concluding that the defendant's demand that the government "identify all of the *Brady* and *Giglio* material in its possession," "went far beyond" what the law requires).[4]

## II.   <u>An Ends-of Justice Tolling of the Speedy Trial Act is Warranted.</u>

Given the due diligence the United States continues to apply to meet its discovery

---

[4] Even in the unusual cases where courts have required the government to identify *Brady* within previously produced discovery, no court found that this was a substantive right held by the defendant in every case.   For example, in *United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020), in which the court ordered the government to identify any known *Brady* material within its prior productions because the production involved over a million records and defense counsel was working "*pro bono* with time constraints and limited financial resources," the Court acknowledged that "persuasive authority has articulated a 'general rule' that 'the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence.'"   *Id.* at 84 n.15, quoting *Skilling*, 554 F.3d at 576.

obligations, as set forth above, elaborated at the August 25, 2021 status hearing, and as set forth

in our Status Memoranda, the government has established that an ends-of-justice continuance

under the STA is warranted.

As the Supreme Court has observed, the STA "recognizes that criminal cases vary widely

and that there are valid reasons for greater delay in particular cases." *Zedner v. United States,*

547 U.S. 489, 497 (2006). "Much of the Act's flexibility is furnished by § 3161(h)([7]), which

governs ends-of-justice continuances." *Id.* at 498. "Congress clearly meant to give district

judges a measure of flexibility in accommodating unusual, complex, and difficult cases." *Id.* at

508. And it knew "that the many sound grounds for granting ends-of-justice continuances could

not be rigidly structured." *Id.*

The need for reasonable time to address discovery obligations is among multiple pretrial

preparation grounds that Courts of Appeals, including our circuit, have routinely held sufficient

to grant continuances and exclude time under the STA – and in cases involving far less

complexity in terms of the volume and nature of data, and the number of defendants entitled to

discoverable materials. *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir.

2019) (upholding ends-of-justice continuances totaling 18 months in two co-defendant health

care fraud and money laundering conspiracy case, in part because the District Court found a need

to "permit defense counsel and the government time to both produce discovery and review

discovery"); *United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (upholding two-month ends-

of-justice continuance in firearm possession case, over defendant's objection, where five days

before trial a superseding indictment with four new counts was returned, "1,000 pages of new

discovery materials and eight hours of recordings" were provided, and the government stated that

"it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013) (upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones")(internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010) (upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011) (upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

Notably, the defendant's lack of consent to the United States' request for an ends-of-justice continuance is irrelevant.   There is no requirement that a defendant personally consent to an ends-of-justice continuance; the only question is whether the district court has complied with the procedural requirements of section 3161(h)(7).   *See United States v. Sobh*, 571 F.3d 600, 603 (6th Cir. 2009) ("By its terms, § 3161(h)([7])(A) does not require a defendant's consent to

the continuance 'if the judge granted such continuance on the basis of his findings that the ends

of justice served by taking such action outweigh the best interest of the public and the defendant

in a speedy trial.'"); *accord United States v. Jones*, 795 F.3d 791, 798 (8th Cir. 2015); *United*

*States v. Williams*, 753 F.3d 626, 635 (6th Cir. 2014); *United States v. Lynch*, 726 F.3d 346, 355

(2d Cir. 2013); *United States v. Gates*, 709 F.3d 58, 65-66 (1st Cir. 2013) ("We hold   .   .   .

that in the ordinary course and within the confines of the STA exclusion provisions, defense

counsel has the power to seek an STA continuance without first informing his client or obtaining

his client's personal consent."); *United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012)

("Herbst's opposition to his counsel's request for a continuance does not prevent that time from

being excluded from the speedy trial calculation."); *United States v. Stewart*, 628 F.3d 246, 254

(6th Cir. 2010) ("[W]here an attorney seeks a continuance without the client's approval, this

court has held that the Speedy Trial Act 'does not require a defendant's consent to the

continuance' in order for a judge to be able to grant a motion in furtherance of the ends of

justice.").   *See also United States v. Stoddard*, 74 F. Supp. 3d 332, 341–42 (D.D.C. 2014)

("Even assuming *arguendo* that Stoddard was not advised of his statutory Speedy Trial rights by

his counsel and that his counsel consented to the tolling of the time without Stoddard's consent,

Stoddard was not prejudiced by this error. The Court tolled the time under the Speedy Trial Act

pursuant to 18 U.S.C. §§ 3161(h)(8)(A), (B)(i), (B)(ii) & B(iv)(2004). None of those provisions

require the consent of the defendant."); *cf. Zedner*, 547 U.S. at 500-01 (holding the STA cannot

be tolled by virtue of a defendant's waiver of its application).

Further, the fact that the defendant is detained is not relevant to this analysis.   Pursuant

to 18 U.S.C. § 3164:

(a)  The trial or other disposition of cases involving—

   (1)  a detained person who is being held in detention solely because he is awaiting trial, and

   (2)  a released person who is awaiting trial and has been designated by the attorney for the Government as being of high risk,

   shall be accorded priority.

(b)  The trial of any person described in subsection (a)(1) or (a)(2) of this section shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government. **The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.**

18 U.S.C. § 3164 [emphasis added].   At the same time that the STA requires the trial of a person who is being detained to commence within ninety days, it also categorically excludes from this computation of time periods of delay enumerated in section 3161(h), including a judicial finding under section 3161(h)(7) that an ends-of-justice continuance is warranted.   So long as the court's findings are warranted and "seriously weigh the benefits of granting the continuance against the strong public and private interests served by speedy trials," *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008), as is the case here, the excluded periods must be omitted from the computation of ninety-day time limitation for bringing a detained defendant to trial.

In this case, an ends-of-justice continuance is warranted under 18 U.S.C. § 3161(h)(7)(A) based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv). As described above, the Capitol Breach is likely the most complex investigation ever prosecuted by the Department of Justice, and we are diligently implementing our discovery plan to produce voluminous materials to Capitol Breach defendants.[5]

---

[5] At the hearing the Court observed that the continuing pandemic may also affect the trial

### III.     There Has Been No Violation of Defendant's Constitutional Speedy Trial Rights.

Similarly, the defendant's constitutional speedy trial rights have not been, and are in no danger of being, violated.   "The absence of a Speedy Trial Act violation does not *ipso facto* defeat a Sixth Amendment speedy trial claim.   *See* 18 U.S.C. § 3173.   But as a number of courts have noted, it will be an 'unusual case' in which the Act is followed but the Constitution violated."   *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014).

In order to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, the Court must consider four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo,* 407 U.S. 514, 530 (1972).   Under the first factor, a defendant must make a threshold showing that the delay between the accusation and the trial was presumptively prejudicial in order for the claim to proceed. *Id.*   If that threshold requirement is met, then the Court must consider the length of the delay "as one factor among several, the extent to which the delay stretches beyond the bare

---

schedule but did not make particularized findings in this regard.   Notably, shortly after the hearing, in recognition of the current high rate of transmission of the Delta variant in the District of Columbia, Chief Judge Howell issued Standing Order 21-47, limiting the number of jury trials that may be conducted at one time until at least October 31, 2021.   Further, the Court found that "for those cases that cannot be tried consistent with those health and safety protocols and limitations, the additional time period from August 31, 2021 through October 31, 2021 is excluded under the Speedy Trial Act as the ends of justice served by the continuances to protect public health and safety and the fair rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. 3161(h)(7)(A)." (As detailed in Standing order 21-47, the Court had previously found that due to the exigent circumstances created by the COVID-19 pandemic, the time period from March 17, 2020 through August 31, 2021, would be excluded in criminal cases under the STA.)   As the defendant's trial is not currently included on the Court's master calendar for prioritizing trials in this environment, we believe that the effect of the continuing pandemic on the ability to hold jury trials also supports tolling of the STA in this case.

minimum needed to trigger judicial examination of the claim."  *Doggett v. United States*, 505

U.S. 647, 652 (1992).

First, there is no presumption of prejudice here and so the defendant cannot even make a

threshold showing that his claim should proceed.   The determination as to whether a delay is

presumptively prejudicial is dependent upon the peculiar circumstances of the case.  *Barker*, 407

U.S. at 530-31; *United States v. Marshall*, 669 F.3d 288, 295–96 (D.C. Cir. 2011) (requiring the

district court to make factual findings regarding defendant's allegation that the government did

not overcome the presumption of prejudice for delays over one year); *United States v. Taylor*,

497 F.3d 673, 677 (D.C. Cir. 2007) (assuming without deciding that a delay barely over one year

between the indictment and trial was presumptively prejudicial).

Even assuming a *Doggett* inquiry were appropriate, a presumption of prejudice is

rebuttable.   The delay experienced in this case, which involves unprecedented complex

discovery issues that affect hundreds of defendants, easily passes constitutional muster.   *See,*

*e.g., Bikundi,* 926 F.3d at 780 (Although the delay of approximately 18 months in defendant's

prosecution for health care fraud, conspiracy to commit health care fraud, money laundering, and

conspiracy to commit money laundering triggered inquiry into whether she was deprived of her

constitutional speedy trial right, factors of the length of the delay and the reason for the delay

weighed in favor of government; defendant's case involved complex conspiracy charges with

complicated evidence and multiple defendants, requiring voluminous discovery, defendant had

herself filed multiple pretrial motions which contributed to the length of the proceedings, as well

as an interlocutory appeal, and she consented to two of the continuances that were granted);

*United States v. Lopesierra–Gutierrez*, 708 F.3d 193, 202–03 (D.C. Cir) (2013) (three-and-one-

half-year delay not prejudicial because complex conspiracy charge involved executing 15

extraditions, fairly treating 15 codefendants, collecting and deciphering foreign evidence, and

coordinating with foreign witnesses); *United States v. Tchibassa*, 452 F.3d 918 (D.C. Cir. 2006)

(no violation despite eleven-year delay between indictment and arrest).

       The defendant's pretrial incarceration is also irrelevant to the determination of whether

his Sixth Amendment speedy trial rights have been violated.   As noted above, any constitutional

speedy trial claim is highly premature.   But even if a *Doggett* inquiry were appropriate, the

defendant has not alleged any prejudice arising from that incarceration.   Notably, the D.C.

Circuit has previously found no Sixth Amendment violation despite lengthy periods of pretrial

incarceration.   *See, e.g., Rice,* 746 F.3d at 1082 ("although Rice suffered lengthy [twenty-six

month] 'pretrial incarceration' and 'anxiety and concern,' he does not even attempt to argue that

he suffered 'the most serious' form of prejudice: the impairment of his defense.   [*Barker*, 407

U.S. at 532].")); *Lopesierra-Gutierrez*, 708 F.3d at 203 (three-and-one-half years of pretrial

detention not a violation).   In addition, in *United States v. Taylor*, No. 18-198 (JEB), 2020 WL

7264070 (D.D.C. Dec. 10, 2020), Judge Boasberg recently denied a defendant's motion to

dismiss for a speedy trial violation, finding that his Sixth Amendment right had not been

infringed notwithstanding the fact that the defendant had at that point been detained pending trial

for 28 months.

## CONCLUSION

       For the reasons described above, the government requests the Court grant its motion for a

continuance of the above-captioned proceeding for sixty days in order to provide discovery in

this case, and further to exclude the time within which a trial must commence under the STA on

the basis that the ends of justice served by taking such actions outweigh the best interest of the

public and the defendant in a speedy trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793


By:   _/s/ Emily A. Miller_                         By:   _/s/ Jacob J. Strain_                       

EMILY A. MILLER                                 JACOB J. STRAIN

Capitol Breach Discovery Coordinator         Utah Bar No. 12680

DC Bar No. 462077                           Assistant United States Attorney

555 Fourth Street, N.W., Room 5826          U.S. Attorney's Office

Washington, DC 20530                     555 4th Street, N.W.

Emily.Miller2@usdoj.gov                  Washington, D.C. 20530

(202) 252-6988                               Jacob.Strain@usdoj.gov

12