UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

                                                Crim. No. 1:21-cr-214 (JDB)

v.                                              Honorable John D. Bates

JOSEPH LINO PADILLA
also known as "Jose Padilla,"
         Defendant.

---

### DEFENDANT'S MOTION FOR DISCOVERY AND FOR AN EVIDENTIARY HEARING IN SUPPORT OF HIS CLAIM OF SELECTIVE PROSECUTION

NOW COMES Defendant, Joseph Lino Padilla, by and through his attorney, Michael J Cronkright, and in support of his motion states:

### INTRODUCTION

Defendant recognizes that he brings his motion in a litigation context where January 6th Defendants have presented a familiar set of issues to their various presiding judges without success. In fact, as far as Defendant is aware, no selective prosecution claims by January 6th Defendants have been granted to date, even in the request for discovery. Speaking colloquially, controlling law presents a high hurdle for him to clear. Nonetheless, Mr. Padilla firmly believes that his prosecution, at least in part, demonstrates a colorable case of selective prosecution.

The larger context in which this motion comes before the Court is that the nation itself is significantly polarized with substantive issues such as abortion, inflation, immigration, and a host of others, dividing the electorate. The federal government is certainly not immune to these issues and the divisive effects that come with them. The January 6th events come in the context of a great national divide that continues to work itself out; with assertions that the 2020 election was stolen still being presented and refuted in the national media on a daily basis.

It is stating the obvious to point out that the winner of the last presidential election came into office with the obligation to appoint an Attorney General whose department would preside

over both the continuing investigation and the continuing prosecution of the various participants in the activities of January 6th, 2021. The question presented herein is whether the government, in its prosecution of Mr. Padilla, has exercised appropriate prosecutorial discretion or in the alternative has crossed the lines of discriminatory effect and purpose.

Mr. Padilla, as he sits in confinement, recounting his faithful military service to his country and his crime free history, has had ample opportunity to think about his treatment as opposed to the treatment of others who, based on behavior, seem to be similarly situated. And, with the considerable analysis afforded to a man of intelligence so confined, concludes that he is not being treated evenly and fairly as contemplated by our law and Constitution. He concludes that in some measure, others of different class and political persuasion fare better when their demonstration of grievances are pressed in similar manner as were his.

Mr. Padilla finds compelling the assertion that he can look around the nation and see that during daytime and nighttime demonstrations, in D.C. and elsewhere, protesters are treated substantially different than he is. He is, of course, aware that other January 6th Defendants have made these comparisons and have not prevailed on their motions. Nonetheless, presented here are the issues which he finds compelling.

## D.C. Climate Protests

Mr. Padilla is confined on allegations that his political activism resulted in acts of violence, trespassing on restricted federal property and other violations of federal criminal codes.  While being so confined, he has some access to certain media accounts. As such, he was able to observe the ongoing media coverage of the 2021 Climate Protests. These protests were led, in part, by Native Americans who are concerned about environmental issues, specifically climate change. He is also aware of the Portland protests led by Antifa and the Black Lives Matter. At the outset, it is noted that even a casual observer of the American political scene could surmise that President

Biden's administration may be more favorably disposed to climate protestors, Native American citizens, and BLM followers, than to "stop the steal" protestors and supporters of former president Trump.

At a hearing of the United States House of Representatives, House Committee on the Judiciary, held on October 21, 2021, in which Attorney General Merrick Garland testified, Representative William Steube questioned Mr. Garland about the disparate treatment of the climate protesters and the January 6th defendants who stormed the Capitol. In his questioning of the Attorney General, he summarized the activities of concern as follows:

> Attorney General Garland in your Senate confirmation hearing you referred to the January 6 protests as the -- and I quote "***most dangerous threat to democracy in your law enforcement and judicial career.***" In that same hearing you even compared January 6 to the Oklahoma city bombing case you worked on where 168 people were killed and June 15th a speech announcing a new enhanced domestic terrorism policy you cited  January 6 as a -- as a motivation for that new policy. You went on to describe January 6 and I quote "as an assault on a mainstay of our democratic system."  You have said that prosecuting extremist attacks on our democratic institution remain central to the mission of the Department of Justice so suffice it to say it's clear that you feel very strongly about using the full force of your position to prosecute those involved in the January 6th protest. What is not clear however is if you will use the same force against violent left wing domestic terrorists.  Just last week on October 14th a group of extremist environmental and indigenous protestors forced their way into the Department of the Interior. ***They fought with and injured security and police officers sending some of those officers to the hospital. The extremists violently pushed their way into a restricted government building in an attempt to thwart the work of the department of interior.*** Police arrested at least 55 protesters on site, but others got away. . . .[1] (emphasis added.)

---

[1] https://www.youtube.com/watch?v=pM1wMb3NA1s

 During this exchange, the Attorney General was asked to compare the attempted forced entry of the Capitol at the January 6th event and the Interior Departmentduring the climate protest. He declined to make any comparison, stating that he was unaware of the climate protest activity.

As per Congressman Steube's description of events, the similarities are glaring. Mr. Padilla is also accused of interfering with a government proceeding, being unlawfully present on federal property, and assaulting federal officers.

In response to the October 14, 2021, protests, "An Interior Department spokesperson said a group of protesters rushed the lobby, injuring at least one security officer who was taken to a nearby hospital. Police and protesters clashed outside the building, and a spokesperson for the protest group accused officers of using stun guns against several unarmed protesters.[2]"  Another account explained that "pushing and shoving resulted in 'multiple injuries' sustained by security personnel, with one officer being transported to a nearby hospital, said Jim Goodwin, a spokesman for U.S. Department of Homeland Security's Federal Protective Service.[3]"

At a related event in this series of protests, the protest occurred at the Whitehouse. At that event, it was reported that 136 people were arrested[4].

---

[2] https://wtop.com/dc/2021/10/hundreds-arrested-during-ongoing-climate-protests-around-dc/
[3] https://insideclimatenews.org/news/15102021/indigenous-climate-activists-arrested-after-occupying-us-department-of-interior/
[4] https://www.desmog.com/2021/10/11/indigenous-136-arrested-white-house-fossil-fuel-protest/

At the Whitehouse protest, barricades and police lines were erected and challenged by protestors who were actively pushing barricades into the police line in a manner reminiscent of Mr. Padilla's actions.



As far as can be determined at this time, the majority of persons arrested were either not charged at all or were ticketed and released. None seem to have been charged with federal crimes[5].

### Portland

Although the Motion presented in *United States v. Kelly Meggs,* Case No. 1:21-cr-00015-APM was denied by the Court, Mr. Padilla adopts the (edited) statement of facts presented by Defendant in his motion:

> Since May 26, 2020, federal law enforcement authorities have arrested 100 people for crimes committed during local demonstrations. Seventy-four faced federal charges, including felonies, misdemeanors, and citation violations. Alleged crimes include assaults on federal officers, some resulting in serious injuries; arson and attempted arson; damaging federal government property; failing to obey lawful

---

[5] Efforts to locate any federal prosecutions continue.

orders; and unlawful use of a drone; among others[6]. It was reported "that the protest is a continuation of a daytime march that occurred this afternoon.[7]" ". . .Footage showed the rioters attempting to force their way into the courthouse while chanting "f*** the United States![8]" Id. 'Later in the evening rioters set a fire outside the courthouse entrance.[9]' The federal Court House closed for weeks under attack and burned[10].

… According to the federal government, the protests in Portland include several assaults on federal officers:

> After repeatedly defying verbal commands to move back, one defendant "placed his right arm around the neck of CBP officer 1 in headlock maneuver."  When another officer came to "remove [defendant's] right arm from around the neck of Officer 1… all three individuals went to the ground."   At the time, the defendant "was carrying a leaf blower and a shield."

United States v. Judd, case no. 1:21-cr-00040, ECF 138 pp.3-4 (citing United States v. Bouchard, case no. 3:20-mj-00165 (D. Ore. July 24, 2020), ECF 1-1, at 4-5. (The Exhibit documents federal charges and dispositions of 39 defendants arrested with charges including 18 U.S.C. §111(a)(1), Assaulting a Federal Officer beginning on May 26, 2020, in Portland, Oregon.)

> Nearly all of the charged were dismissed or marked nolle prosequi, with one action pending, (and who was dismissed because he died before they could dismiss [sic]); and for the few that remained, the government agreed to recommend probation. Id. The government acknowledged in its Opposition on the Judd motion that, "[a]lthough it is true that each case was eventually dismissed by the government for unknown reasons (typically after the defendants repeatedly agreed to waive their rights to a preliminary hearing or indictment over a period of months), all were initially facing felony charges.)." Gov't. Opp. Doc. 154 at 17 (emphasis added). Those felony charges, however, did not include 18 U.S.C. § 2384, §1512(c)(2) and 2, or § 1512(k).

---

[6] See: Press Release, 74 People Facing Federal Charges for Crimes Committed During Portland Demonstrations (Aug. 27, 2020), available at https://www.justice.gov/usao-or/pr/74-people-facing-federal-charges-crimes-committed-during-portland-demonstrations  (last visited July 11, 2022)
[7] See: Rioters Set Fire to Federal Courthouse in Portland One Day after Fencing Removed (yahoo.com)Zachary Evans, Rioters Set Fire to Federal Courthouse in Portland One Day after Fencing Removed https://news.yahoo.com/rioters-set-fire-federal-courthouse-162333860.html
[8] Id.
[9] "Demonstration Devolves into Riot July 4 to 5 2020-Arrests Made, Firearm Recovered (Photo), by Portland Police Bureau: https://twitter.com/portlandpolice/status/1279756488643411968
[10] See Portland Police Chief Slams Violence At Riots | National Review, August 6, 2020, Zackary Evans, https://www.nationalreview.com/news/portland-police-chief-slams-incomprehensible-violence-says-rioters-target-local-officers-with-mortars-and-commercial-grade-fireworks/Case   1:22-cr-00015-APM   Document   189   Filed 07/11/22 Page 8 of 13

## Senate Confirmation Hearings

Defendant Padilla adopts the following statement of facts made in *United States v Ianni,*

1:21-cr-0045 (ECF 35):

> During the confirmation hearings for Supreme Court Justice Brett
> Kavanaugh in September and October 2018, more than 200
> protesters were arrested at the Capitol building.[11] On October 5, 101
> people were arrested and charged under either D.C. Code §22-1307
> or DC §10-503.16(b)(4).[12] As on January 6, 2021, Vice President
> Mike Pence was present at and presiding over the session of
> Congress as protestors interrupted.[13] On October 6, large organized
> groups of protesters broke through and climbed over police
> barricades meant to close off certain parts of the Capitol Building;
> some live streamed and posted photographs and videos of their
> unlawful demonstrations on social media .[14] Court records appear to
> indicate that just one protester, who had previous arrests for
> unlawful protest activities, had his case prosecuted in the United
> States District Court.[15] [16]

## The Curious Case of Ray Epps

The comparison to Ray Epps was made by Defendant Deborah Sandoval in *United States*

*v. Sandoval, et. al.*, 1:21-cr-00195 in her selective prosecution motion. Id. (ECF 67). Again, Mr.

Padilla adopts the statement of facts:

> Thousands of individuals were present at the United States Capitol
> Building on January 6, 2021, and only slightly over 700 people have

---

[11] Breslow, Jason, "The Resistance at the Kavanaugh Hearings," NPR, (Sep. 8, 2018), available at https://www.npr.org/2018/09/08/645497667/the-resistance-at-the-kavanaugh-hearings-more-than-200-arrests

[12] U. S. Capitol Press Release (October 5, 2018), available at https://www.uscp.gov/media-center/press-releases/uscapitol-police-respond-multiple-instances-unlawful-demonstration

[13] Fram, Alan, et al, "Kavanaugh Sworn to High Court After Rancorous Confirmation," AP News, (Oct. 6, 2018), available at https://apnews.com/article/north-america-ap-top-news-sexual-misconduct-supreme-courts-courts-8234f0b8a6194d8b89ff79f9b0c94f35

[14] Rosenberg, Adam, "Brett Kavanaugh Protestors Ignore Police Barricades, Occupy the U.S. Capitol," yahoo!news, (Oct. 6, 2018), available at https://www.yahoo.com/news/brett-kavanaugh-protesters-ignore-police-194043428.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAK_dv53JnNnUin5JikI8bifOcB2QOHRfco98qqFfq8cH8LPaoDk2VTmSLW5yLInYQA1Y4flClVnJOqzL9NdmU1aFJEsJUG8FgrMklQTb7LntoFW1LZ_xbfXJiOmtbbXBXzJzbru0qN2perDWxrtMAdlkqZ66xi49XIiWhxAI3LxC

[15] United States v. Barry, No. 1:18-mj-00111-RMM (D.D.C.).

[16] Judge Nichols rejected this comparison, finding that the Defendant in that case was not similarly situated. *United States v Ianni,* 1:21-cr-0045 (ECF 40).

been arrested in connection with these events, meaning that many individuals were not arrested or charged in connection with these events. Mr. Ray Epps of Arizona is one example of a person who was present during and even instigated the events of January 6, 2021, but was not charged in connection to these events.[17] Mr. Epps "appears to have worked alongside several individuals – many of them suspiciously unindicted – to carry out a breach of the police barricades that induced a subsequent flood of unsuspecting MAGA protesters to unwittingly trespass on Capitol restricted grounds and place themselves in legal jeopardy."[18]

While Mr. Epps was originally "Suspect 16" in the FBI's Washington Field Office's request for the public's help in identifying suspects from January 6, 2021, and Mr. Epps was featured on the FBI Capitol Violence Most Wanted List, Mr. Epps was removed from the FBI's Capitol Violence Most Wanted List on July 1, 2021.[19] To date, Mr. Epps has never been arrested or charged in relation to the events on January 6, 2021.[20] Furthermore, the FBI and Justice Department have not released any information regarding whether Mr. Epps was served with a search warrant.[21]

Ms. Sandoval alleges that Mr. Epps serves as one example of many individuals who actively participated in and encouraged the events which took place on January 6, 2021, and yet were not indicted for their involvement. Mr. Epps serves as just one example of an individual who is "similarly situated" to Ms. Sandoval who was never indicted for his actions. The existence of Mr. Epps, and the existence of others like him, who participated in the Capitol Breach but were not charged in connection with their actions, demonstrates "some evidence" that Ms. Sandoval was specifically targeted for selective prosecution. Additionally, the FBI's removal of Mr. Epps' image from the Most Wanted list and failure to take any action towards arresting him shows they specifically intended to cause a discriminatory impact on individuals who, like Ms. Sandoval, were charged on January 6, 2021, cases.

Mr. Epps seems to have an uncanny ability to find the spotlight. There is a plethora of video

footage showing him at the front of activity and encouraging people to press forward and go into

---

[17] Meet Ray Epps: The Fed-Protected Provocateur Who Appears to Have Led the Very First 1/6 Attack on the U.S.Capitol, REVOLVER (October 25, 2021), https://www.revolver.news/2021/10/meet-ray-epps-the-fed-protectedprovocateur-who-appears-to-have-led-the-very-first-1-6-attack-on-the-u-s-capitol/ .
[18] Id.
[19] Id.
[20] Id.
[21] Id.

the Capitol building. And yet, there are no §1512 charges (or any other January 6 charges) leveled against him.

### The Curious Case of James "Jimmy" Knowles

Mr. Knowles, like Mr. Epps, is also present in numerous videos and still shots. He is apparently associated with the Kansas City Proud Boys, and can be found pre-planning with them, marching with them wearing tactical gear, crossing police lines, and entering the Capitol. And yet, upon information and belief, he is not charged with any crimes at all.

Defendant acknowledges that with Mr. Epps and Mr. Knowles, he has no knowledge of the political persuasion of these individuals. It is nonetheless difficult to argue that these individuals are not similarly situated to Mr. Padilla and the hundreds of other defendants facing charges.

### CONTROLLING LAW AND ARGUMENT

In *United States v. Nordean*, Case 1:21-cr-00175-TJK, the Court explained:

> The Executive Branch has "broad discretion" in "enforc[ing] the Nation's criminal laws." United States v. Armstrong, 517 U.S. 456, 464 (1996) (quotation omitted); United States v. Fokker Servs. B.V., 818 F.3d 733, 741 (D.C. Cir. 2016). Indeed, "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." Fokker Servs. B.V., 818 F.3d at 741 (cleaned up). Thus, "the presumption of regularity applies to [those] decisions and, in the absence of clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties." Id. (cleaned up).

> But the Executive's discretion is limited by the Fifth Amendment, which prohibits the Government from pursuing criminal charges against a citizen that amount to a "'practical denial' of equal protection of law." Armstrong, 517 U.S. at 465 (quoting Yick Wo v. Hopkins, 118 U.S. 356, Case 1:21-cr-00175-TJK Document 378 Filed 06/07/22 Page 1 of 13 373 (1886)). Claims of "selective prosecution" or "selective enforcement" guard against this

possibility. Id.: see also Whren v. United States, 517 U.S. 806, 813 (1996) (the Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race"). Selective prosecution and enforcement claims are subject to the same "demanding" standard. Arm-strong, 517 U.S. at 463; see Mahoney v. U.S. Capitol Police Bd., No. 21-cv-2314 (JEB), 2022 WL 523009, at *8 (D.D.C. Feb. 22, 2022), on reconsideration in part, 2022 WL 1184565 (D.D.C. Apr. 21, 2022) (describing the same two-prong test for selective enforcement and selective prosecution claims); Richards v. Gelsomino, 814 F. App'x 607, 610 (D.C. Cir. 2020) (quoting Armstrong's test for selective prosecution for a selective enforcement claim).

To establish either claim, a defendant must make two showings. First, she must demonstrate that the relevant policy or action "had a discriminatory effect." Armstrong, 517 U.S. at 465; see also Richards, 814 F. App'x at 610. In other words, she must show that the Government afforded "different treatment" to persons "similarly situated" to her. Armstrong, 517 U.S. at 470. When another person's circumstances "present no distinguishable legitimate . . . factors that might justify" different prosecutorial or enforcement decisions between that person and the defendant, that person is similarly situated to the defendant. Branch Ministries v. Rossotti, 211 F.3d 137, 145 (D.C. Cir. 2000) (cleaned up). Courts "narrowly" interpret the phrase "similarly situated." United States v. Stone, 394 F. Supp. 3d 1, 31 (D.D.C. 2019). Second, a defendant must show that the challenged policy or action had "a discriminatory purpose" or intent. Armstrong, 517 U.S. at 465. In other words, she must show that the Government prosecuted, arrested, or otherwise investigated her "because of" her membership in an identifiable group. Wayte v. United States, 470 U.S. 598, 610 (1985); see also Mahoney, 2022 WL 523009, at *8.

## Discriminatory Effect

The discriminatory effect asserted herein, simply stated, is that Mr. Padilla is being subjected to disparate prosecutorial treatment due to his political views and activism. While this motion focuses on a single individual, this prosecution does not occur in a vacuum. The hundreds of protestors who arrived at the Capitol on January 6th would have difficulty finding a similar treatment elsewhere in American history, even if on a lesser scale. The *Armstrong* assessment is made difficult by the systemic nature of the claim. The quest to find a single similarly situated

person and event is infinitely more difficult when the spotlight of the Court is so hyper focused that there seems to be no comparisons.  And yet, it is not just the January 6 events themselves but also the federal response that is unique. In one count, Mr. Padilla is charged with assaulting an officer with a Trump sign being carried past him by a group and for which he had his hands on the sign for a matter of seconds. In a collection of other counts, he is charged with various nuances with what may be categorized in lay terms as trespassing charges. Even without entering the Capitol, he is charged under §1512(c)(2). With each act, there are facts and laws put before the court for consideration and comparison to other crimes and alleged criminals where those others fared better in the system.

We can look either at the two individuals cited above who were prominently featured in the January 6 protest, or at the myriad examples of similar conduct from around the nation and observe that the discriminatory effect is suggested on the facts.  On the other hand, if we compare the global collection of facts and charges and attempt to compare them to the mythical similarly situated case, the result is prosecutorial power left absolutely unchecked by any Court authority. Stated differently, cases which are factually identical are a rarity in the first place. The collection of 900 January 6 cases produces a vast array of facts which can be used to distinguish any single case in a selective prosecution analysis *as applied*.

### Discriminatory Intent

The discriminatory intent is evident when we consider the national trends of political protest. It is not a matter of republican and democrat, but rather a matter of favored and disfavored causes and views. Defendant cannot look "under the hood" of the Justice Department and point to a "smoking gun" memorandum mandating the selective prosecution of President Trump supporters. He can, sitting in the D.C. jail, watch the news with disdain and see protestors pushing

against barricades identical to the ones he pushed, into federal officers that look remarkably like the one on the other side of the barriers he pushed and wonder why they get a "pass" from the federal government.

Others, with more information and access have commented on the disparate treatment and surmised a discriminatory purpose. For example, the Republican Staff Report for the United States House of Representatives Committee on the Judiciary (November 4, 2022), hereinafter, *Staff Report*, asserts in its rather inflammatory report:

> The Federal Bureau of Investigation, under the stewardship of Director Christopher Wray and Attorney General Merrick Garland, is broken. The problem lies not with the majority of front-line agents who serve our country, but with the FBI's politicized bureaucracy. The problem lies, for example, with the FBI hierarchy that spied on President Trump's campaign and ridiculed conservative Americans. The problem lies with FBI bureaucrats who altered and mischaracterized evidence to federal courts, circumvented safeguards, and exploited weaknesses in policies governing investigations and informants to target politically disfavored subjects and to protect favored ones. The problem lies with the FBI structure that centralizes high-profile cases in D.C., in the hands of politicized actors with politicized incentives. Quite simply, the problem—the rot within the FBI—festers in and proceeds from Washington. Id. Page 2 of 1050.

The *Staff Report* goes on to make specific statements and conclusion about the prosecutorial intent on January 6 cases:

> "Whistleblowers describe how the FBI has abused its law-enforcement authorities for political purposes, and how actions by FBI leadership show a political bias against conservatives." Id. Pg. 2.
>
> Following Committee Republicans' July 27, 2022, letter to Director Wray, new whistleblowers came forward with information about how the FBI manipulated the manner in which it categorized January 6-related investigations to create a misleading narrative that domestic terrorism is organically surging around the country. These new whistleblower disclosures indicate that the Washington Field Office's (WFO) handling of DVE investigations relating to January

6 "diverge[s]" from established practice in a way that overstates the national DVE threat. Id. Page 10.  Citations omitted.

"The whistleblower alleged that "the FBI has not followed regular procedure" with respect to January 6 cases" Id.

"Whistleblowers allege that the FBI is manipulating data about domestic violent extremism to support the Biden Administration's political agenda. Other information suggests the FBI prioritizes investigations and uses differing tactics based on political considerations—using aggressive tactics against political opponents of the Biden Administration while going softer on, or outright ignoring, allegations against the Administration's political allies." Id. Page 8.

"...selective enforcement of federal law is evident in how the Justice Department has aggressively pursued prosecutions related to January 6, 2021, while virtually ignoring federal crimes stemming from left-wing riots in the summer of 2020." Id. Page 8.

"In addition, the whistleblower disclosed that the FBI is sacrificing its other important federal law-enforcement duties to pursue these January 6 investigations. The whistleblower recalled, for example, being "told that child sexual abuse material investigations were no longer an FBI priority and should be referred to local law enforcement agencies." This decision to ignore such serious crimes is a dereliction of the FBI's mission to investigate violations of federal laws and a disservice to the victims of child sexual abuse crimes." Id. Page 11.

"There appears to be a disparity in how the FBI and Justice Department are pursuing January 6-related matters. Compounding this appearance is how the FBI has failed to fully respond to inquiries from Congressional Republicans on this matter while providing information to the partisan Democrat-led Select Committee investigating the events of January 6, 2021." Id. Page 41.

Even granting the partisan nature of the *Staff Report*, the assertion of bias is made by persons with greater access to information (here, Whistleblowers and Congressional staffers) that there is a systemic partisan political motivation within the FBI and the Justice Department as a

whole which is focused on Donald Trump and his January 6 supporters. The assertion here is that the discriminatory affect and intent is discernable but requires looking at a bigger picture.

The significant hurdles articulated in *Armstrong* have been discussed by every Court ruling on a January 6th selective prosecution motion. Theoretically at least, "[t]he similarly situated requirement does not make a selective-prosecution claim impossible to prove." *Armstrong* at 466. Yet, as applied in the District, they may well be exactly that. For example, in *United States v. Ianni,* Judge Nichols concluded that "The particular combination of circumstances at issue here—including entering the Capitol while it was closed to the public; being among a very large demonstration; being among a crowd in which others were aggressive or violent (some shockingly so); and targeting a highly sensitive Congressional proceeding—are too different from any example or combination of examples that Ianni has pointed to for a claim of selective prosecution." Id. (ECF 40). Looking at only one of those points of comparison, the "targeting of a highly sensitive Congressional proceeding" would eliminate the majority of selective prosecution claims presented in January 6th cases.

In similar fashion, Judge Nichols stated, "But there are obvious differences between those, like Miller, who stormed the Capitol on January 6, 2021, and those who rioted in the streets of Portland in the summer of 2020.The Portland rioters' conduct, while obviously serious, ***did not target a proceeding prescribed by the Constitution and established to ensure a peaceful transition of power.***" *United States v. Miller*, No. 1:21-cr-00119 (ECF 67). Emphasis Added.

This Court previously addressed some of the issues raised in this motion in *United States v. Brock*, 1:21-cr-00140. In its Memorandum Opinion, the Court stated:

> Brock focuses primarily on the Portland protesters, arguing that they are "similarly situated" to January 6th defendants such as himself. Selective Prosecution Mot. at 3–5. They are not. As other courts have found, the mob on January 6th—of which the government

alleges Brock was a part—"***endangered hundreds of federal officials in the Capitol complex***," including Members of Congress and their staffs, Vice President Pence, and the United States Capitol Police.

Other factors, such as the alleged purpose of the January 6th defendants' actions—***obstructing the certification of the Electoral College*** vote—would also justify differences in prosecutorial behavior. Id. (ECF 58) Emphasis added.

Taken collectively, these cases and perhaps others have created a bar so high that it cannot be cleared by a January 6th defendant. There can be no doubt that a selective prosecution motion calls on the court to make a comparative analysis between two individuals, one charged, and one similarly situated who is not charged. The theoretical construct of a selective prosecution motion brought by a January 6th Defendant is going to be that this defendant was subject to a discriminatory effect and intent due to his/her political disposition. In support of that assertion, Defendant is obliged to satisfy the *Armstrong* "rigorous standard."  He can only do that by finding a similarly situated but uncharged individual. By extrapolation from the above holdings, then, he would necessarily be looking for an uncharged individual who, in broad daylight, entered the capitol building at a time when it was closed to the public, who was part of a large demonstration focused on a highly sensitive congressional proceeding prescribed by the Constitution and established to ensure a peaceful transition of power, and the net effect of the activity was that it obstructed the certification of the Electoral College vote while endangering hundreds of federal officials in the Capitol Complex.  Presumably, absent that "minimal showing," any comparison would result in the determination that the two individuals are not similarly situated.

Given that stringent standard, it would seem that only another January 6th participant could be expected to meet the standard. In limiting the acceptable comparison to other January 6 cases, the Court has taken the analysis far beyond anything anticipated by the *Armstrong* Court.

Presumably then, Defendant is left looking for a person who is unlikely to exist. Thus, the *Armstrong* Court's assertion that the standard does not make the claim impossible no longer seems accurate. The very protections that the selective prosecution jurisprudence offers are neutralized by such a stringent standard.

## Conclusion

The hesitation to "trump" prosecutorial discretion is noted.  The difficulty is stating a case of selective prosecution is also noted.  It is respectfully submitted that prior decisions in this District and in this Court have created a hurdle which is impossible and beyond that reasonably anticipated by the *Armstrong* Court.  The difficulty in presenting a case without discovery is evident. Nonetheless, Defendant asserts that he has presented the court with a colorable case of selective prosecution and therefore requests appropriate and reasonable discovery in order to discover facts necessary to the litigation of the issue.

Respectfully submitted:

/s/ *Michael J Cronkright*

_____
Michael J Cronkright (P52671)
Cronkright Law, PLLC
420 W. Saginaw, Ste. J2A
Lansing, MI 48917
Phone (517) 881-4643
Michael@Cronkrightlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Defendant Joseph Padilla's
**DEFENDANT'S MOTION FOR DISCOVERY AND FOR AN EVIDENTIARY
HEARING IN SUPPORT OF HIS CLAIM OF SELECTIVE PROSECUTION**

is being filed via the Electronic Court Filing System (ECF), causing a copy to be served upon government counsel of record, this 2nd  day of January, 2023.

Respectfully submitted:

/s/ *Michael J Cronkright*
_____
Michael J Cronkright (P52671)
Cronkright Law, PLLC
420 W. Saginaw, Ste. J2A
Lansing, MI 48917
Phone (517) 881-4643
Michael@Cronkrightlaw.com