UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-214 (JDB) |
| | : | |
| JOSEPH LINO PADILLA, | : | |
| | : | |
| Defendant. | : | |

OPPOSITION TO MOTION TO REVOKE DETENTION
AND REOPEN DETENTION HEARING

Defendant Joseph Lino Padilla seeks an order revoking his detention and reopening the detention hearing. ECF 61. Except for the hardships borne by his family and his behavior while in custody, Padilla offers nothing new in the instant motion. Every other argument he advances here was previously rejected by this Court. Because Padilla presents no new information that was not known to him at the time of his original detention hearing that has a material bearing on the detention inquiry, this Court should deny the motion.

FACTUAL BACKGROUND

The defendant is charged via superseding indictment with seven felony and five misdemeanor offenses arising out of his conduct in connection with the attack on the U.S. Capitol on January 6, 2021. These offenses include three separate assaults on federal officers (two with dangerous weapons), civil disorder, obstruction of an official proceeding, and trespass. ECF 48. The defendant faces a lengthy prison sentence if convicted.

These charges stem from Padilla's conduct at the U.S. Capitol on January 6, 2021, as a Joint Session of Congress convened to certify the 2020 U.S. Presidential Election. The Capitol Building and exterior grounds were closed to the public and surrounded by law enforcement officers, barricades, and signage. As the congressional session convened, Padilla can be seen on

video approaching a metal barricade positioned in front of a line of Metropolitan Police Department officers guarding entry onto the Capitol grounds. Padilla verbally engaged with officers, calling them "f**king oathbreakers," and threatened that he would not stop even if beaten and tased by the police. Padilla then pushed the metal barricade into the line of officers using both hands and shouting: "Push! Push! F**king push! F**king push!"

Shortly thereafter, other members of the crowd began moving a large sign with wheels and a metal frame toward the barricade. Padilla grabbed onto the sign with his right hand in an effort to ram it against the barricade and the law enforcement officers protecting it.

Three hours later, Padilla is captured on video outside the archway to the Lower West Terrace entrance to the Capitol, where another set of officers was standing guard. Padilla remained some distance away from the archway as adjacent rioters battled the officers and threw various objects at them. Padilla then threw flagpole at the line of officers in the archway, hitting at least one of them. Padilla remained in the same spot for another minute as other individuals around him continued to assault police.

On January 7, 2021, Padilla posted to Facebook:

> There's a lot of memes and posts flying around saying that the people who were fighting last night were Antifa provacateurs [sic] etc. I just want to say that as a first hand observer of every point of last night, that it was not Antifa. They were Patriots who were trying to Restore the Republic after being attacked by cops, who struck first. Even those who broke the windows next to the doorway to the Capitol were Patriots trying to find a way to turn the Flanks of the cops.

From January 7 to January 18, Padilla also posted a number of comments on social media, including:

> After I had my right hand knuckles and ring finger crushed for just talking to an officer I knew was a soldier and reminding him of his duty to refuse unlawful orders, I got pissed, and so did many others. That's when we started pushing.

**Opposition to Motion to Revoke Detention
and Reopen Detention Hearing—Page 2**

> I was right there. I have the wounds to prove it. I pushed the rails, I pushed the stairs, and then pushed the doorway. I was beaten unconscious twice, sprayed more times than I care to count, received strikes from batons that should have been lethal (Multiple temple and carotid strikes) except that God was on my side.
>
> Some chode had stalled everyone out saying he had an "announcement" that amounted to "if we quit pushing the cops will quit beating us[.]" Basically surrender. If that asshat hadn't stalled our momentum, the cops wouldn't have been able to reinforce their position and we would have occupied the Capitol.
>
> If we could have occupied the Capitol, we could have invoked the right given to us in the 2nd paragraph of the Declaration of Independence….We would have been in the Seat of Power. All we would need to do is declare our grievances with the government and dissolve the legislature, and replace it with Patriots who were there. Then simply re-adopt the Constitution with amendments added to secure future Federal elections.
>
> What happened Wednesday is what needs to be done again and again. I'm not talking about those b*tches that were just let in, I'm talking about those of us who got pissed when the cops starting bashin [sic] hands and pepper spraying people who were only talking and shouting.
>
> Don't you realize it yet? The war has been upon us for years and we've just been wringing hands about it. After the events of the 6th, I'm done being passive.

The defendant has been detained since his arrest on February 23, 2021. Trial is scheduled for May 1, 2023.

## ARGUMENT

I.  **This Court Should Not Reopen the Detention Hearing or Revoke the Detention Order**

A threshold matter is whether Padilla has cleared the hurdle necessary to reopen his detention hearing. The Bail Reform Act provides that a detention hearing "may be reopened ... at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there

are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). As the Honorable U.S. District Judge Rudolph Contreras stated in another January 6 case:

> Although the statute does not define "material bearing," it has been defined to "refer to information that actually affects the Court's decision whether to detain the defendant pending trial." *United States v. Chansley*, No. 21-cr-3, 2021 WL 2809436, at *3 (D.D.C. July 6, 2021). "Thus, in addition to 'bearing' on—having a logical relation to—detention, the sort of new information capable of reopening a detention hearing must also 'bear' materially—it must relate in some significant or essential way to the decision whether to detain." *United States v. Worrell*, No. 21-cr-292, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021). In addition, "[n]ew and material information ... consists of something other than a defendant's own evaluation of his character or the strength of the case against him; instead, it must consist of truly changed circumstances, something unexpected, or a significant event." *United States v. Caldwell*, No. 21-cr-181, 2022 WL 168343, at *6 (D.D.C. Jan. 19, 2022) (*quoting United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020)).

*United States v. Krol*, No. 1:22-cr-110 (D.D.C. Nov. 15, 2022).

The only "new" information Padilla proffers in his motion are the hardships experienced by his family as a result of his detention, and his own behavior while in custody. As set forth in the table below, every other fact and argument raised by the Padilla here was previously considered and found insufficient by this Court:

| Fact/Argument raised in Instant Motion | Fact/Argument Previously Considered by this Court |
|---|---|
| Pushing against police barriers. ECF 61 at 23. | Pushing against police barriers. ECF 24 at 3, 12, 17 |
| Involvement with large Trump sign. ECF 61 at 9, 21, 22. | Involvement with large Trump sign. ECF 24 at 3, 12. |
| Throw of flagpole toward officers. ECF 61 at 21, 22. | Throw of flagpole toward officers. ECF 24 at 4, 13, 14, 17. |

| | |
|---|---|
| Claim to have "made no threats or suggestions of any civil disobedience or resisting authority."  ECF 61 at 17. | Finding claim that he did not make any threats of violence or civil unrest before or after January 6 "is not accurate."  ECF 24 at 17-18. |
| Lack of leadership role.  ECF 61 at 5, 7, 22, 23, | Noting "Padilla worked in tandem with other rioters and shouted words of encouragement" but did not assume a de facto leadership role.  ECF 24 at 10. |
| Status as military veteran.  ECF 61 at 3, 9, 10 | Status as military veteran.  ECF 24 at 2, 15. |
| Diagnosis of PTSD.  ECF 61 at 9, 11, 12, 16, 23. | Diagnosis of PTSD.  ECF 24 at 15, 23. |
| Lack of criminal history.  ECF 61 at 10, 18, 20. | Lack of criminal history.  ECF 24 at 15. |
| Lack of drug or alcohol abuse.  ECF 61 at 9. | "He has no … history of substance abuse."  ECF 24 at 15. |
| Lack of firearm ownership.  ECF 61 at 17. | Lack of firearm ownership.  ECF 24 at 18. |
| Compliance with FBI investigation and arrest.  ECF 61 at 17. | "No allegation that Padilla attempted to obstruct the FBI's investigation or evade arrest."  ECF 24 at 16. |
| Lengthy ties to Tennessee.  ECF 61 at 17. | Lengthy ties to Tennessee.  ECF 24 at 15, 24. |
| Limited income from disability benefits.  ECF 61 at 16. | Limited income from disability benefits.  ECF 24 at 24. |
| Wife as proposed third-party custodian.  ECF 61 at 23-24. | Wife as proposed third-party custodian.  ECF 24 at 20. |
| Willingness to comply with conditions and court orders.  ECF 61 at 23. | Willingness to comply with conditions and court orders.  ECF 24 at 20. |

For the first time, Padilla posits an additional tie to the community—his membership of Cedar Ridge Seventh Day Adventist church.  ECF 61 at 17.  However, this fact was known by Padilla at the time of his original detention hearing and cannot, therefore, support reopening the detention hearing.

Indeed, the only new and previously unknown information proffered by Padilla here is (1) the hardship experienced by his family as a result of his continued detention (ECF 61 at 5, 12-5), and (2) his lack of disciplinary infractions while in pretrial custody (ECF 61 at 17). Neither fact warrants revoking the detention order or reopening the detention hearing. These issues do not have a material bearing on whether Padilla poses a threat to the safety of the community.

## CONCLUSION

For these reasons, Padilla's motion to revoke his detention order and reopen the detention hearing should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481 052

*/s/ Douglas B. Brasher*
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
douglas.brasher@usdoj.gov
Telephone: 214-659-8604