UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-214 (JDB) |
| | : | |
| JOSEPH LINO PADILLA, | : | |
| | : | |
| Defendant. | : | |

## OPPOSITION TO MOTION TO COMPEL DISCOVERY
## IN SUPPORT OF SELECTIVE-ENFORCEMENT CLAIM

Defendant Joseph Lino Padilla seeks to compel production of all internal government correspondence concerning its charging decisions in this case. ECF 62. Padilla seeks such materials in aid of his allegation that the government selectively targeted him for prosecution due to his political affiliation. This court and other courts in this district have denied similar requests for discovery in January 6 cases. *See, e.g.*, *United States v. Brock*, No. CR 21-140 (JDB), 2022 WL 3910549, at *11–12 (D.D.C. Aug. 31, 2022); *United States v. Judd*, No. 1:21-cr-40, 2021 WL 6134590 (D.D.C. Dec. 28, 2021). The same result is warranted here.

## FACTUAL BACKGROUND

The defendant is charged via superseding indictment with seven felony and five misdemeanor offenses arising out of his conduct in connection with the attack on the U.S. Capitol on January 6, 2021. These offenses include three separate assaults on federal officers (two with dangerous weapons), civil disorder, obstruction of an official proceeding, and trespass. ECF 48. The defendant faces a lengthy prison sentence if convicted.

These charges stem from Padilla's conduct at the U.S. Capitol on January 6, 2021, as a Joint Session of Congress convened to certify the 2020 U.S. Presidential Election. The Capitol Building and exterior grounds were closed to the public and surrounded by law enforcement

officers, barricades, and signage. As the congressional session convened, Padilla can be seen on video approaching a metal barricade positioned in front of a line of Metropolitan Police Department officers guarding entry onto the Capitol grounds. Padilla verbally engaged with officers, calling them "f**king oathbreakers," and threatened that he would not stop even if beaten and tased by the police. Padilla then pushed the metal barricade into the line of officers using both hands and shouting: "Push! Push! F**king push! F**king push!"

Shortly thereafter, other members of the crowd began moving a large sign with wheels and a metal frame toward the barricade. Padilla grabbed onto the sign with his right hand in an effort to ram it against the barricade and the law enforcement officers protecting it.

Three hours later, Padilla is captured on video outside the archway to the Lower West Terrace entrance to the Capitol, where another set of officers was standing guard. Padilla remained some distance away from the archway as adjacent rioters battled the officers and threw various objects at them. Padilla then threw flagpole at the line of officers in the archway, hitting at least one of them. Padilla remained in the same spot for another minute as other individuals around him continued to assault police.

On January 7, 2021, Padilla posted to Facebook:

> There's a lot of memes and posts flying around saying that the people who were fighting last night were Antifa provacateurs [sic] etc. I just want to say that as a first hand observer of every point of last night, that it was not Antifa. They were Patriots who were trying to Restore the Republic after being attacked by cops, who struck first. Even those who broke the windows next to the doorway to the Capitol were Patriots trying to find a way to turn the Flanks of the cops.

From January 7 to January 18, Padilla also posted a number of comments on social media, including:

> After I had my right hand knuckles and ring finger crushed for just talking to an officer I knew was a soldier and reminding him of his

duty to refuse unlawful orders, I got pissed, and so did many others. That's when we started pushing.

I was right there. I have the wounds to prove it. I pushed the rails, I pushed the stairs, and then pushed the doorway. I was beaten unconscious twice, sprayed more times than I care to count, received strikes from batons that should have been lethal (Multiple temple and carotid strikes) except that God was on my side.

Some chode had stalled everyone out saying he had an "announcement" that amounted to "if we quit pushing the cops will quit beating us[.]" Basically surrender. If that asshat hadn't stalled our momentum, the cops wouldn't have been able to reinforce their position and we would have occupied the Capitol.

If we could have occupied the Capitol, we could have invoked the right given to us in the 2nd paragraph of the Declaration of Independence….We would have been in the Seat of Power. All we would need to do is declare our grievances with the government and dissolve the legislature, and replace it with Patriots who were there. Then simply re-adopt the Constitution with amendments added to secure future Federal elections.

What happened Wednesday is what needs to be done again and again. I'm not talking about those b*tches that were just let in, I'm talking about those of us who got pissed when the cops starting bashin [sic] hands and pepper spraying people who were only talking and shouting.

Don't you realize it yet? The war has been upon us for years and we've just been wringing hands about it. After the events of the 6th, I'm done being passive.

## ARGUMENT

Padilla's motion fails the threshold evidentiary showing for discovery on a selective-prosecution claim. His request should be denied.

## I.   Legal Framework

Because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have

properly discharged their duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). This presumption "rests in part on an assessment of the relative competence of prosecutors and courts." *Id.* at 465. "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* (citation omitted); *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is … at its most limited when reviewing the Executive's charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted).

To overcome that presumption, a defendant must present "clear evidence" that a decision to prosecute was "based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Armstrong*, 517 U.S. at 464-465. "The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id*. at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

Concerned that selective-prosecution inquiries "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy," the Supreme Court has also imposed a "correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. The defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution: "discriminatory effect and discriminatory intent." *Id*. (citation omitted). The defendant's evidence must also be "credible"—something more than "personal conclusions based on anecdotal evidence." *Id*. at 470. "If either part of the test is

failed," the defendant cannot "subject[] the Government to discovery." *Att'y Gen. of United States v. Irish People, Inc*., 684 F.2d 928, 947 (D.C. Cir. 1982).

## II.    Discussion

Padilla alleges that the government targeted him for prosecution because of his political activism, claiming that the Department of Justice under President Biden, is "more favorably disposed to climate protestors, Native American citizens, and BLM followers, than to 'stop the steal' protestors and supporters of former president Trump." But his motion fails to adduce any credible evidence—as *Armstrong* demands—supporting an inference that (1) the government has treated him differently than other similarly situated defendants, or (2) any such disparity implicates his political association.

### A.    Padilla's motion adduces no evidence of discriminatory effect.

As Padilla acknowledges, other January 6 defendants have sought to compel production of internal government communications about its charging decisions without success. ECF 62 at 1. This court recently denied a motion by a January 6 defendant who alleged that the government had charged him (a conservative who supported President Trump) more severely than liberal-aligned individuals who participated in riots that plagued Portland in the summer of 2020, protests surrounding Justice Kavanaugh's Supreme Court confirmation, and a sit-in at Immigration and Customs Enforcement headquarters.  *Brock*, 2022 WL 3910549, at *11-12. And the Honorable U.S. District Judge Trevor McFadden denied a similar motion by a January 6 defendant. *See Judd*, 2021 WL 6134590 at *1.[1]

---

[1] Similarly, the Honorable U.S. District Judge Amit P. Mehta denied a motion to dismiss by a January 6 defendant who alleged that the government had charged him more harshly than defendants who participated in the Portland protests and the recent protests concerning the Supreme Court confirmation hearings. United States v. Rhodes, No. 22-CR-15 (APM), 2022 WL 3042200, at *4 (D.D.C. Aug. 2, 2022) (denying motion by defendant Kelley Meggs).

In denying Brock's motion, this Court held that Brock was not similarly situated to his comparison class of Portland defendants because, although rioters in both cities attacked federal buildings, the Portland defendants primarily attacked vacant buildings at night, whereas the January 6 defendants attacked the Capitol in broad daylight as the building stood occupied by thousands of staffers, legislators, and the Vice President. *Brock*, 2022 WL 3910549, at *11-12. This Court further noted the "the alleged purpose of the January 6th defendants' actions— obstructing the certification of the Electoral College vote—would also justify differences in prosecutorial behavior" because the Portland rioters are not alleged to have obstructed an official proceeding. *Id.*

What was true in *Brock* and *Judd* is true here. Padilla and others around him attacked, and attempted to enter, the Capitol Building as the Vice President, Members of Congress, and thousands of staffers convened inside. That conduct, and the "threat to civilians" it engendered, *id.* at *5, dispels any inference of disparate treatment. The Court should apply the reasoning in *Brock* and *Judd*.

Padilla similarly intimates that the government's decision to charge him, but not Native Americans who participated in climate change protests in Washington, D.C., in the summer of 2021, reveals a discriminatory motive. ECF 62 at 4-5. That allegation is equally baseless. Padilla does not identify any particular person that he claims is similarly situated, and fails to show that his comparators' "circumstances present no distinguishable legitimate prosecutorial factors that might justify different prosecutorial decisions." *See Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000).

All told, Padilla has failed his threshold showing on *Armstrong*'s first element.

**B.      Klein's motion adduces no evidence of discriminatory purpose.**

With respect to *Armstrong*'s second prong, Padilla has failed to adduce any evidence that improper motives undergird this prosecution.

Padilla complains that the government charged him, but not other rioters, including two individuals he identifies by name. That the government has not yet charged everyone involved in breaching the U.S. Capitol on January 6 says nothing. Many individuals have not yet been charged because the government has had to marshal an unprecedented level of investigatory resources to identify and charge each defendant who participated in the U.S. Capitol attack. As Judge McFadden correctly observed, "the Government continues to charge new individuals with offenses related to January 6." *United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. 2021).[2] For that reason, Padilla's effort to claim disparate treatment in comparison to an ever-expanding sample size is "unsupportable." *Id.*

Moreover, the decision whether to prosecute conduct occurring in the summer of 2020 was made by the previous U.S. Attorney for the District of Columbia. *See Judd*, 2021 WL 6134590, at *6 n.9 (noting that [a] Republican-appointed U.S. Attorney (under the direction of a Republican-appointed Attorney General) was responsible for the initial prosecutorial decisions in Portland"). Likewise, the previous U.S. Attorney initiated many of the January 6 cases now on this Court's docket. *See id.* ("DOJ began arresting January 6 defendants while still under

---

[2] As of January 6, 2023, the government had arrested more than 950 defendants for criminal conduct associated with the January 6 attack on the U.S. Capitol and continues seeking the public's assistance with identifying over 350 individuals believed to have committed violent acts on the Capitol grounds, including over 250 who assaulted police officers. https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-statement-second-anniversary-january-6-attack-capitol

Republican leadership.").[3] As this timeline shows, Padilla's suggestion that he is being singled out due to this political activism lacks merit.

Finally, the U.S. Attorney for the District of Columbia—as an officer of this Court— further represents that Padilla's political views played no role in his office's charging decisions in this case.

## CONCLUSION

For these reasons, Padilla's motion to compel discovery should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481 052

*/s/ Douglas B. Brasher*
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
douglas.brasher@usdoj.gov
Telephone: 214-659-8604

---

[3] For Padilla specifically, the case against him was commenced in February 2021, when Michael R. Sherwin—who had been appointed by Attorney General William Barr during the Trump administration— was Acting United States Attorney for the District of Columbia. *See* Compl. ECF No. 1.