UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff | Crim. No. 21-214 (JDB) |
| v. | Hon. John D. Bates |
| JOSEPH LINO PADILLA also known as "Jose Padilla," | **DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO REVOKE DETENTION ORDER & RE-OPEN THE RECORD** |
| Defendant. | |

### DEFENDANT JOSEPH LINO PADILLA'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO REVOKE THE DETENTION ORDER AND RE-OPEN THE RECORD

NOW COMES Defendant Joseph Lino Padilla, by and through his attorney, Michael J. Cronkright, and Cronkright Law, PLLC, and states in response to the Government's Opposition of Defendant's Motion to place Defendant on Conditional Release Pending Trial.

### Applicable Law

The Bail Reform Act provides that a detention hearing "may be reopened ... at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). As the Honorable U.S. District Judge Rudolph Contreras stated in another January 6 case:

> Although the statute does not define "material bearing," it has been defined to "refer to information that actually affects the Court's decision whether to detain the defendant pending trial." United States v. Chansley, No. 21-cr-3, 2021 WL 2809436, at *3 (D.D.C. July 6, 2021). "Thus, in addition to 'bearing' on—having a logical relation to—detention, the sort of new information capable of reopening a detention hearing must also 'bear' materially—it must relate in some significant or essential way to the decision whether to detain." United States v. Worrell, No. 21-cr-292, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021). In addition, "[n]ew and material information ... consists of something other than a defendant's own

evaluation of his character or the strength of the case against him; instead, it must consist of truly changed circumstances, something unexpected, or a significant event." United States v. Caldwell, No. 21-cr-181, 2022 WL 168343, at *6 (D.D.C. Jan. 19, 2022) (quoting United States v. Lee, 451 F. Supp. 3d 1, 5 (D.D.C. 2020)). United States v. Krol, No. 1:22-cr-110 (D.D.C. Nov. 15, 2022).

### Argument

As the Court is aware, Joseph "Jose" Lino Padilla is an American citizen who was born in this country and has never had any contact with the criminal justice system prior to January 6th, 2021. He has no prior arrests because he does not have a criminal disposition. The alleged offenses are an anomaly in Mr. Padilla's otherwise law-abiding life unlike other individuals associated with the January 6th, 2021, events.

Mr. Padilla is a veteran of the United States Army National Guard, honorably discharged and currently suffering from combat related PTSD. Mr. Padilla is not, nor does he ever plan to be, part of any organization that promotes and engages in political violence. Mr. Padilla has maintained his position that he is against political violence. Other than the present allegations against Mr. Padilla, he has never participated in any acts of political violence because violence and aggression are not an inherent characteristic of Mr. Padilla. Mr. Padilla is a family oriented, military veteran, not a danger to society as he has been portrayed to be.

It is against this backdrop that the government previously argued for detention and currently argues that there is no new information presented in Defendant's motion (while conceding at the same time that there is new information regarding Defendant's family status and his exemplary confinement record[1].) Defendant agrees that this is new information and further asserts that the unprecedented delays in January 6 cases, and in his case in particular, provides additional "new" information which is fair to consider.

---

[1] The undersigned is attempting to obtain the jail records for Defendant but has not yet received them.

During his confinement, Mr. Padilla has been appropriate and compliant. Mr. Padilla has had no disciplinary reports filed during his incarceration. Mr. Padilla is polite and respectful towards the corrections officers and other inmates.

He is a dedicated husband with a strong bond with his wife and children. Although the Government continuously minimizes the effect that his incarceration has had on his family, he does not. The government demonstrates a clear disregard for the mental health conditions his family are enduring due to his detention. Mrs. Padilla's mental health and ability to function normally has been in steady decline since his initial arrest and will likely continue to decline.

The Government has stated that Padilla's "actions demonstrate that he is willing to follow his beliefs, and act on them violently, no matter how far they take him from his home and no matter what 'strangers' are on the other side of the 'battle' he intends to wage in violation of the laws designed to protect our democracy." ECF 20 @ 12. This hyperbolic conclusion is contradicted by Mr. Padilla's history and characteristics; specifically his peaceful history of confinement.

## The Government's Interpretation of Facts

The "Factual Background" section of the Government's Opposition to Motion to Revoke Detention And Reopen Detention Hearing not only misrepresents key facts, but also draws unsupported conclusions.

In the first instance, the Government alleges "Padilla did strike officers directly with dangerous objects." ECF 20 @ PG. 7. This refers in part to the allegation that the large Trump sign was a dangerous weapon in the hands of Mr. Padilla and was used in that manner by him. In fact, Mr. Padilla attempted to erect the Trump sign in an act of protest but was forcefully shoved to the ground by officers before the sign was taken away from the group of protesters carrying it. Mr. Padilla did not strike officers with the sign.

Mr. Padilla does not dispute that he had his hand on the sign for a matter of seconds as it was carried past him. Nor does he dispute that there was a man shouting directions in the form of "put it up here." His involvement with the sign amounted to an attempt to set it up and to untangle it from the bicycle racks.

The Government asserts that "[i]n coordination with other rioters, Padilla used a huge sign as a bettering ram," ECF 20 @ pg. 6 and "grabbed onto the sign with his right hand in an effort to ram it against the barricade and the law enforcement officers protecting it." ECF 64 @ pg. 2. If the Government has evidence in support of such "coordination" they have not disclosed it to the Defendant. Padilla did not coordinate with any other protesters to use the sign as a battering ram. In a video entitled "video 5 MPD Body cam sign with ed and dom," (Exhibit 1), Mr. Padilla is seen receiving several harsh blows to his upper body and head. Seconds later, he is clearly disoriented.[2] While Mr. Padilla is disoriented, the Trump sign can be seen entering the video from the left and crowd surfs its way behind Mr. Padilla without him noticing.[3] When Padilla becomes aware of the sign behind him[4], he does not immediately put his hands on it. Only after hearing a fellow protestor repeatedly shout "put it up there" through a megaphone, did Mr. Padilla attempt to erect the sign in front of the police line. This demonstrates that Mr. Padilla did not place his hand on the sign "in an effort to ram it against the barricade and the law enforcement officers protecting it." The government is conflating Mr. Padilla's very brief interaction with the sign with other January 6th defendants whose intentions were and are unbeknownst to Mr. Padilla[5]. To do something "in coordination with," requires that both parties organize the activity to work together

---

[2] Video @ 19 minutes 40 seconds
[3] Video @ 20 minutes 35 seconds
[4] Video @ 20 minutes 54 seconds
[5] It can perhaps be fairly assumed that the person saying "put it up here" had formulated an intent to erect the sign.

efficiently. Padilla was not in coordination with anyone to use the sign as a battering ram but arguably was coordinating with the bystander shouting "put it up there" with the intent to use the sign as a sign.

At the prior detention hearing, Mr. Padilla would have known his intent, but the detailed analysis of the evidence in consultation would have been difficult to accomplish prior to the hearing[6]. In that regard, it is fair to suggest that this too provides new information relative to the detention issue.

In the second instance, Mr. Padilla is alleged to have thrown a flagpole with intent to injure officers. "Padilla then threw a flagpole at the line of officers in the archway, hitting at least one of them." ECF 64 @ pg. 2. Despite requests, no evidence has been provided that any officer claims to have been struck by a flagpole thrown by Mr. Padilla. The video available clearly demonstrates that Mr. Padilla held out his left hand in an apparent aiming maneuver, that he threw the flagpole in the direction of a protestor who had just picked up a weapon and was advancing toward an altercation that was occurring, that the flagpole went over the protestor's head right as the protestor ducked, and that the flagpole hit the wall in the tunnel. Eleven law enforcement officers from the tunnel were shown the video of Padilla tossing the pole in the general area where they were, and all deny that the pole had even struck them. (Attached as Exhibits 2-7.)

Mr. Padilla's intent may be more appropriately explored at trial. Nonetheless, despite the Government's attempt to assert that he acted with the clear intent to assault an officer, Defendant asserts herein that there is another plausible and rational explanation for his behavior. Mr. Padilla is not intending to argue trial matters in a detention hearing. Obviously, he has the presumption of

---

[6] The prior hearing was handled by prior counsel. The undersigned attorney has limited knowledge of the extent of the discovery that was available and the time constraints which existed. Here, he is making a generalized assertion that continuing discovery and analysis benefits the inquiry in favor of Defendant.

innocence and many of the issues discussed here will ultimately be settled by a jury. Nonetheless, the Government offers their interpretation of facts with a level of certainty that is intended to support their position. It is represented herein that that level of certainty is not warranted based on available evidence. This is important to articulation of a future threat to the community.

**The Government Has Not Clearly Identified and Articulated a Future Threat to the Community Under the Meaning of the DC Circuit's Decision in *U.S. v. Munchel***

When assessing the question of future dangerousness under *Munchel*, the district court must consider whether the defendant presents a clearly identifiable and articulable future threat to the community. In making its assessment, the Court must consider whether the defendant's history, characteristics, and alleged criminal conduct make clear that he poses a concrete, prospective threat to public safety. United States v. Munchel, 991 F.3d 1273 (DC Cir. 2021). The Government has failed to prove "by clear and convincing evidence that [Mr. Padilla] presents an *identified and articulable threat* to an individual or the community" (emphasis added) as required by Munchel. United States v. Munchel, 991 F.3d 1280. "Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community. The threat need not be of physical violence and may extend to "non-physical harms such as corrupting a union." United States v. King , 849 F.2d 485, 487 n.2 (11th Cir. 1988) (quoting S. REP. NO. 98–225, at 3 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3195–96). *But it must be clearly identified.* (emphasis added) See Salerno, 481 U.S. at 750, 107 S.Ct. 2095 (noting that the Act applies in "narrow circumstances" where "the Government musters convincing proof that the arrestee, already indicted or held to answer for a serious crime, presents a demonstrable danger to the community"); cf. Tortora , 922 F.2d at 894 (Breyer, C.J., concurring) (reversing an order of release where the district court failed to "carefully analyze[ ] the danger [the defendant] posed").

Mr. Padilla's history and characteristics are not demonstrative of someone who presents a clearly identifiable and articulable future threat to the community but are rather demonstrative of someone who has lived a law-abiding life, every day of his life, excepting January 6, 2021.

"The danger Padilla poses to the community is concrete and continuing." ECF 20 @ pg. 11 The government has failed to clearly identify the threat Mr. Padilla "poses to the community." Instead, the government has deduced that despite Mr. Padilla's non-existent criminal history, his complete cooperation with law enforcement, and his impeccable behavior during detainment, that he is a danger to the community. The assertion that Mr. Padilla is a danger to the community if he were to be released pending trial is unsupported by anything in his life before or after January 6th. This perhaps explains the Government's interpretation of his brief interactions with law enforcement on January 6th. The Government appears to be inflating Mr. Padilla's involvement on January 6th to support their narrative of dangerousness.

The First Amendment to the United States Constitution empowers every citizen to harshly criticize the federal government for any conceivable reason— including election results. Mr. Padilla's social media posts are constitutionally protected, as are his beliefs about the illegitimacy of the November 2020 election. Defendant rejects any assertion or suggestion that his political beliefs should be weighed against him in a pre-trial detention analysis. The social media posts made by Mr. Padilla after January 6th, 2021, are best described as internet bravado arising from his frustration with law enforcement's excessive use of force against him, or in some instances from his then held belief that the election outcome was incorrect. These posts were not made with the intention of inciting further violence despite the government's attempt to persuade otherwise.

## **Conclusion**

WHEREFORE, for the foregoing reasons, Defendant Joseph Padilla respectfully requests that he be released on personal recognizance. If that request is denied, defendant requests as an alternative, that he be released and placed into the Highly Intensive Supervision Program of the Pretrial Services Agency conditioned on reasonable conditions including but not limited to electronic monitoring, home confinement, and intensive supervision.

Respectfully submitted:

/s/ *Michael J Cronkright*

_____
Michael J Cronkright (P52671)
Cronkright Law, PLLC
420 W. Saginaw, Ste. J2A
Lansing, MI 48917
Phone (517) 881-4643
Michael@Cronkrightlaw.com