UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:21-cr-214 (JDB) |
| | : | |
| JOSEPH LINO PADILLA, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S TRIAL BRIEF**

The government respectfully submits this brief summarizing the evidence the government anticipates will be admitted at trial and the various evidentiary and legal issues that may arise. As an initial matter, the government notes that the parties have been trying and will continue trying to narrow the issues that are actually in dispute, and to agree to stipulated facts and the admissibility of exhibits wherever possible. In the event that sufficient agreement can be reached, some of the witnesses described in Section II below may not be called.

**I.     The January 6th Capitol Riot and the Defendant's Actions**

On January 6, 2021, thousands of people descended on the U.S. Capitol building and grounds when a joint session of Congress had convened to certify the votes of the Electoral College for the 2020 Presidential Election. Vice President Michael Pence, as the President of the Senate, was there to preside over the joint session and, later, the Senate proceedings. On that day, physical barriers surrounded the U.S. Capitol building and grounds. At all relevant times, the United States Capitol building and its grounds—including the West Terrace, the partially-constructed inaugural stage on the Capitol's West front, and the entire Capitol building itself—were closed to members of the public.

As the House and Senate proceedings took place, a large crowd of protestors gathered outside the Capitol. Temporary and permanent barricades were in place around the exterior of the

**Government's Trial Brief—Page 1**

building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. Shortly after 2:00 p.m., a violent mob of rioters forced entry into the Capitol. Mayhem broke out inside the building, putting an hours-long halt to the electoral vote count while elected representatives, congressional staff, and members of the press hid from the mob. The joint session of Congress, and thus the constitutionally-mandated proceeding held to confirm the results of the 2020 Presidential Election, was effectively suspended until shortly after 8:00 p.m.

At approximately 1:31 p.m., the defendant, Joseph Lino Padilla, approached a bike rack barricade line manned by officers from the Metropolitan Police Department and the United State Capitol Police, whom they were assisting, on the Lower West Terrace. As captured on several body-worn cameras and videos captured by members of the crowd, the defendant pushed against the barricade screaming, among other things, "Push! Push! Fucking push!" When his efforts to break the police line failed, the defendant turned to the crowd behind him and called them cowards for not joining his attack. A few minutes later, the defendant, along with other rioters, used a large sign with a metal frame as a battering ram to push against the police line.

When the police line finally broke, officers retreated up to the inaugural stage through an internal stairwell. The defendant followed close behind. Surveillance video shows that he was the second rioter up that stairwell.

The officers retreated further into the Capitol, through a hallway that has come to be known as the "Tunnel" in the context of January 6th related prosecutions. There, officers packed shoulder to shoulder, with riot shields above their heads, to stop rioters from breaching into the heart of the Capitol building. Within minutes of rioters packing into the Tunnel themselves, the defendant

walked into the Tunnel, just a few feet back from the officers, as alarms blared and rioters chanted "Whose House? Our House!"

At approximately 4:45 p.m., rioters became increasingly violent at the officers positioned in the mouth of the Tunnel, attacking them with flagpoles, hockey sticks, a megaphone, and other objects. At the rioters' feet, a fallen officer was being dragged out into the crowd and another rioter was experiencing a medical emergency. As this was happening, the defendant threw a flagpole into the Tunnel, striking a Capitol Police officer in the helmet. The violence directed towards the officers defending the Tunnel waxed and waned for several hours, but did not stop until the rioters were finally cleared from the Capitol building and the surrounding area.

The defendant later posted several messages and comments on social media about his experience at the Capitol, including:

- After I had my right hand knuckles and ring finger crushed for just talking to an officer I knew was a soldier and reminding him of his duty to refuse unlawful orders, I got pissed, and so did many others. That's when we started pushing.

- I was right there. I have the wounds to prove it. I pushed the rails, I pushed the stairs, and then pushed the doorway. I was beaten unconscious twice, sprayed more times than I care to count, received strikes from batons that should have been lethal (Multiple temple and carotid strikes) except that God was on my side.

- Some chode had stalled everyone out saying he had an "announcement" that amounted to "if we quit pushing the cops will quit beating us[.]" Basically surrender. If that asshat hadn't stalled our momentum, the cops wouldn't have been able to reinforce their position and we would have occupied the Capitol.

- If we could have occupied the Capitol, we could have invoked the right given to us in the 2nd paragraph of the Declaration of Independence….We would have been in the Seat of Power. All we would need to do is declare our grievances with the government and dissolve the legislature, and replace it with Patriots who were there. Then simply re-adopt the Constitution with amendments added to secure future Federal elections.

- What happened Wednesday is what needs to be done again and again. I'm not talking about those b[*]tches that were just let in, I'm talking about those of us who got pissed when the cops starting bashing hands and pepper spraying people who were only talking and shouting.

- Don't you realize it yet? The war has been upon us for years and we've just been wringing hands about it. After the events of the 6th, I'm done being passive.

- My conscious is clear. We've been lied to for decades, our elections too have been fraudulent since at least 2000. Also, if I'm not mistaken, the 2nd paragraph of the Declaration of Independence, one of our founding documents, specifically gave me the right to do what I did. "... it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness. Prudence, indeed, will dictate that Governments long established should not be changed for light and transient causes; and accordingly all experience hath shewn, that mankind are more disposed to suffer, while evils are sufferable, than to right themselves by abolishing the forms to which they are accustomed." Treason my ass. Keep on being jealous that I'm not a cowardly worm.`

- I was Batoned, sprayed, gassed and tased. I was beaten unconscious. And I came back for more because they were in the wrong. As soon as they started spraying and beating people for no reason it went from being about protesting the election to Restoring the Republic.`

- Also want to say that the riot was never about Trump. We were attempting to restore the Republic by dissolving the legislature and convening a constitutional convention of the people to add amendments that would prevent any federal election from having ANY appearance of impropriety.

- The rest of us just gathered around the railing and talked to the cops until they started attacking us. My right hand knuckles and ring finger were crushed by a cops baton for the crime of touching the railing while I was talking to a cop who was a Vet […] After that we started poushign them, and ended up fighting our way up to the doors of the capitol and began trying to push our way in

- Most of us in the breach had nothing to protect us against the spray and gas. My backpack, jacket and god are the only reason I'm not more severely injured […] Just wish we had made it into the building

The evidence will also include messages the defendant sent during the riot on January 6th, including:

- I've been beaten. Sprayed and tasted. Resting before I go in for more

- Were pushing the door. Had to take a break. Nuckles and fingers broke, pretty sure I have a concussion

- Hurting, sprayed and beat again but I'm ok

**Government's Trial Brief—Page 4**

- It's not a rally anymore it's a revolution

## II. The Government's Proof

The government anticipates calling several witnesses, including:

### a. Inspector Lanelle Hawa, United States Secret Service

Inspector Hawa will testify about the presence of Vice President Pence in the Capitol on January 6, 2021, about his evacuation from the Senate Chamber, and that he remained within the restricted perimeter of the Capitol until at least 8:00 p.m.

### b. Captain Carneysha Mendoza, United States Capitol Police

Captain Mendoza will testify about U.S. Capitol Building, generally, the restricted perimeter in place on January 6, 2021, and the interruption of the congressional proceedings due to the breach of the Capitol building and restricted perimeter.

### c. Sergeant Jayson Cropper, Metropolitan Police Department

Sergeant Cropper will testify about his encounter with the defendant on the police line on the West Plaza. He will authenticate his body worn camera video, as well as other videos depicting the events on the West Plaza.

### d. Officer Owais Akhtar, Metropolitan Police Department

Officer Akhtar will testify about his encounter with the defendant on the police line on the West Plaza.

### e. Sergeant Paul Riley, Metropolitan Police Department

Sergeant Riley will testify about his experience defending the Capitol against rioters in the Tunnel.

### f. Officer Oscar Corado, United States Capitol Police

Officer Corado will testify about his experience defending the Capitol against rioters in the Tunnel. He will identify himself in various video exhibits and will testify that the flagpole thrown

by the defendant struck his helmet.  The government does not anticipate that Officer Corado will testify that he was injured by the flagpole.

### g. Special Agents Mac Montana and Timothy Ervin, Federal Bureau of Investigation

Special Agent Montana will introduce various exhibits into evidence, including the jacket and backpack worn by the defendant on January 6, 2021, videos of the defendant, the defendant's social media posts, and other self-authenticating records.  If necessary, the government may call another case agent, FBI Special Agent Timothy Ervin, to establish the admissibility of certain exhibits.

## III.   Elements of the Crimes Charged

### a. Assaulting, Resisting, or Impeding Certain Officers (Count 1)

Count 1 relates to the defendant's actions at the police barricade line between approximately 1:37 p.m. and 1:39 p.m.  To find the defendant guilty of Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1), the Court, as the finder of fact, must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the Metropolitan Police Department or United States Capitol Police;

*Second*: the defendant did such act forcibly;

*Third*: the defendant did such act intentionally;

*Fourth*: the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his official duties, or any person assisting officers of the United States who were then engaged in the performance of their official duties; and

*Fifth*: the defendant made physical contact with a person who was an officer or an employee of the United States who was then engaged in the performance of his official duties or assisting officers of the United States who were then engaged in the performance of their official duties, or acted with the intent to commit another felony.

### b. Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon (Counts 2 and 4)

Count 2 relates to the defendant's actions involving the large metal sign between approximately 1:39 p.m. and 1:41 p.m. Count 4 relates to the defendant throwing the flagpole at approximately 4:47 p.m. To find the defendant guilty of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon in violation of 18 U.S.C. § 111(a)(1) and (b), the Court, as the finder of fact, must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the Metropolitan Police Department or United States Capitol Police;

*Second*: the defendant did such act forcibly;

*Third*: the defendant did such act intentionally;

*Fourth*: the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his official duties, or any person assisting such an officer or employee in the performance of that officer's duties; and

*Fifth*: in doing such acts, the defendant intentionally used a deadly or dangerous weapon.

If the Court finds that the large metal sign or the flagpole are not dangerous weapons, the Court may find the defendant guilty of felony assault under 18 U.S.C. § 111(a)(1), provided the government has met its burden on the elements of that crime.

**Government's Trial Brief—Page 7**

    **c. Civil Disorder (Counts 3 and 5)**

Count 3 relates to the defendant's actions along the police line between approximately 1:37 p.m. and 1:41 p.m. involving the bike racks and the large metal sign. Count 5 relates to the defendant's actions, including throwing the flagpole, near the Tunnel at approximately 4:47 p.m. To find the defendant guilty of Civil Disorder in violation of 18 U.S.C. § 231(a), the Court, as the finder of fact, must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;

*Second*: at the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and

*Third*: the civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

    **d. Obstruction of an Official Proceeding (Count 6)**

To find the defendant guilty of Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2), the Court, as the finder of fact, must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant attempted to or did obstruct or impede an official proceeding;

*Second*: the defendant intended to obstruct or impede the official proceeding;

*Third*: the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

*Fourth*: the defendant acted corruptly.

The Court may also find the defendant guilty of Count 6 under an aiding and abetting theory pursuant to 18 U.S.C. § 2.

### e. Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Count 7)

To find the defendant guilty of Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A), the Court, as the finder of fact, must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: that the defendant entered or remained in a restricted building or grounds without lawful authority to do so;

*Second*: that the defendant did so knowingly; and

*Third*: that the defendant carried a deadly or dangerous weapon during or in relation to this offense.

### f. Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Count 8)

To find the defendant guilty of Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A), the Court, as the finder of fact, must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

*Second*: that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

*Third*: that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions; and

*Fourth:* that the defendant carried a deadly or dangerous weapon during or in relation to this offense.

### g. Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Count 9)

To find the defendant guilty of Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A), the Court, as the finder of fact, must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: that the defendant engaged in any act of physical violence against any person in any restricted building or grounds;

*Second*: that the defendant did so knowingly; and

*Third:* that the defendant carried a deadly or dangerous weapon during or in relation to this offense.

### h. Disorderly Conduct in a Capitol Building or Grounds (Count 10)

To find the defendant guilty of Disorderly Conduct in a Capitol Building or Grounds in violation of 40 U.S.C. § 5104(e)(2)(D) the Court, as the finder of fact, must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

*Second*: that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

*Third*: that the defendant acted willfully and knowingly.

### i. Act of Physical Violence in the Capitol Grounds or Buildings (Count 11)

To find the defendant guilty of Act of Physical Violence in the Capitol Grounds or Buildings in violation of 40 U.S.C. § 5104(e)(2)(F) the Court, as the finder of fact, must be convinced that the government has proved each of the following beyond a reasonable doubt:

> *First*: that the defendant engaged in any act of physical violence in any of the United States Capitol Buildings or Grounds, and
>
> *Second*: that the defendant acted willfully and knowingly.

## IV. Anticipated Defenses

The government believes that the defendant may offer or attempt to offer evidence or argument in support of the affirmative defenses of self-defense and/or defense of others. The defendant may also argue that the large metal sign and the flagpole do not meet the definition of "deadly or dangerous weapon."

### a. Self-defense

The government believes that the defendant may try to argue that the police initiated the violence on the West Plaza by pushing the defendant away from the barricades, spraying him with pepper spray, and hitting his hands with their batons, and that, therefore, his subsequent assaults of police officers were justified in self-defense.

A defendant charged under 18 U.S.C. § 111 may assert, as an affirmative defense, a theory of self-defense or defense-of-others, "which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in *immediate danger of unlawful bodily harm* from his adversary and that the use of such force *is necessary to avoid this danger*." *United States v. Middleton*, 690 F.2d 820, 826 (11th Cir. 1982) (emphasis added).

"A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (internal quotation marks and citation omitted). That principle applies fully to Section 111 prosecutions. *See, e.g.*, *United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could not, as a matter of law, have been acting in self-defense"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012)

("[A]n individual who is the attacker cannot make out a claim of self-defense as a justification for an assault.").

This defense, however, contains two important limitations. First, Congress enacted Section 111 "to protect both federal officers and federal functions." *United States v. Feola*, 420 U.S. 671, 679 (1975). As a result, "[a]n individual is not justified in using force for the purpose of resisting arrest or other performance of duty by a law enforcement officer within the scope of his official duties." *United States v. Drapeau*, 644 F.3d 646, 653 (8th Cir. 2011); *see also United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996) ("[Self-defense] principles must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties."). Second, even in circumstances where an individual might be justified in using some force to resist a federal officer, that resistance must be reasonable under those circumstances. *See Abrams v. United States*, 237 F.2d 42, 43 (D.C. Cir. 1956) (observing that "the use of 'reasonable force' only would have been open to defendants"); *see also United States v. Wallace,* 368 F.2d 537, 538 (4th Cir. 1966) (explaining that Section 111 permits "reasonable force employed in a justifiable belief that it is exerted in self-defense"); *United States v. Perkins*, 488 F.2d 652, 655 (1st Cir. 1973) (defendant may be convicted under Section 111 where "he used more force than was necessary to protect the person or property of himself or others").

Both limitations apply here. The evidence in this case will show that the defendant had illegally entered a restricted area of the U.S. Capitol and was therefore subject to arrest. The video further shows that officers instructed him to back up and to not touch the barriers. At no point did any officer use excessive force against the defendant. *Cf. Drapeau*, 644 F.3d 646, 653-654 ("[A]n individual may be justified in using force to resist excessive force used by a law enforcement officer."). Because the video evidence shows officers lawfully defending the Capitol against a

violent, non-compliant, and unlawfully present crowd, the defendant was not justified in using any force to resist an arrest or to move past a police line. He cannot therefore argue self-defense.

Moreover, even if the defendant had the right to resist the officers in some fashion, the video evidence will show that the defendant escalated the encounter into a violent attack on the officers. *See Waters v. Lockett* 896 F.3d 559, 570 (D.C. Cir. 2018) (self-defense not applicable "if [the defendant] and his co-conspirators used excessive force to repel Hargrove's attack"). This is especially true in situations like this one, where the defendant returned to confront officers after being repelled multiple times.

### b. Defense of Others

The government believes that the defendant may try to argue that he threw the flagpole at another rioter who he believed was about to attack officers at the mouth of the Tunnel, and that he only hit the officers because the other rioter ducked as the pole was thrown.

The "defense of others" defense is founded on the same principles and carries the same limitations as the defense of self-defense. In *United States v. Slatten*, 395 F. Supp. 3d 45, 112-113 (D.D.C. 2018), a federal murder case, District Court Judge Royce C. Lamberth instructed the jury on defense-of-others as follows:

> Self-defense or defense-of-others is a complete defense to murder where Mr. Slatten actually believed that he or another person was in danger of serious bodily injury, and actually believed that the use of deadly force was necessary to defend against that danger and both of these beliefs were reasonable. Every person has the right to use a reasonable amount of self-defense or defense-of-others if: One, he actually believes he or another person is in imminent danger of bodily harm; and if, two, he has reasonable grounds for that belief. The question is not whether looking back on the incident you believe that the use of force was necessary. The question is whether Mr. Slatten, under the circumstances as they appeared to him at the time of incident, actually believed he or another person was in imminent danger of bodily harm, and could reasonably hold that belief. A person may use a reasonable amount of force in self-defense, including, in some circumstances, deadly force.

*Id*. Judge Lamberth drew that instruction from the "Redbook." *See id.* (citing Barbra Bergman, *Criminal Jury Instructions for the District of Columbia* §§ 9.500, 9.501(B)-(C), 9.503 (5th ed. 2018)).

A defendant must therefore satisfy five elements for a defense-of-others claim: (1) the defendant actually believed that another person was in danger of injury; (2) that belief was reasonable; (3) the defendant actually believed that the use of force was necessary to defend the person against the danger; (4) that belief was reasonable as well; and (5) the defendant used a reasonable amount of force in response. *See Slatten*, 395 F. Supp. 3d at 112-113; *accord* Pattern Criminal Jury Instructions of the Seventh Circuit, 6.01 (2012 ed.) ("A person may use force when he reasonably believes that force is necessary to defend [himself/another person] against the imminent use of unlawful force."); Wayne R. LaFave, *Substantive Criminal Law* § 10.5, Defense-of-others (Dec. 2021) ("[O]ne is justified in using reasonable force in defense-of-others person, even a stranger, when he reasonably believes that the other is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger.").

Moreover, the defendant has the initial burden of production to raise a defense-of-others claim. *See United States v. Branch*, 91 F.3d 699, 712 (5th Cir. 1996) (concerning the analytically identical self-defense justification). Only after the defendant meets his burden of production does the government have the burden to disprove the defense beyond a reasonable doubt. *See id.* The government is under no duty to affirmatively produce evidence to refute the defense-of-others claim. *See id*. For the defendant to satisfy the initial burden of production, "there must be evidence [in the trial record] sufficient for a reasonable jury to find in [the defendant's] favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988).

### c. Large sign and/or flagpole are not "deadly or dangerous weapons"

The defendant may argue that the large metal sign and/or the flagpole do not qualify as deadly or dangerous weapons.

An object may be a "deadly or dangerous weapon" in one of two ways. First, an object is a deadly or dangerous weapon if it is inherently or obviously dangerous or deadly. Such inherently dangerous weapons include guns, knives, and the like. Second, if the object is not inherently or obviously dangerous or deadly, an object is a deadly or dangerous weapon if the object is capable of causing serious bodily injury or death to another person and the defendant used it in that manner. In determining whether the object is a "deadly or dangerous weapon," the Court, as the finder of fact, may consider both the physical capabilities of the object used and the manner in which the defendant used it.

The term "serious bodily injury" means bodily injury which involves a substantial risk of death; extreme physical pain; medical intervention such as surgery, hospitalization, or physical rehabilitation; protracted and obvious disfigurement; or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

Due the size of the large metal sign and the way that it was used by the defendant and other rioters to ram against the police line, the government believes the evidence will establish beyond a reasonable doubt that it qualifies as a dangerous or deadly weapon. Similarly, due to the way the defendant threw the flagpole, and due to the fact that it hit an officer in the head, the government believes that the evidence will establish that the flagpole also qualifies as a dangerous or deadly weapon, even if it did not cause any injury.

## V. Conclusion

The government anticipates that its case-in-chief will take approximately two trial days. The government requests approximately 10 minutes for its opening statement and approximately 20 minutes, in total, for its closing argument and rebuttal.

                                            Respectfully submitted,

                                            MATTHEW M. GRAVES
                                            UNITED STATES ATTORNEY
                                            D.C. Bar No. 481 052

                                            */s/ Douglas B. Brasher*
                                            DOUGLAS B. BRASHER
                                            Assistant United States Attorney
                                            Texas State Bar No. 24077601
                                            1100 Commerce Street, Third Floor
                                            Dallas, Texas 75242-1699
                                            Telephone: 214-659-8604
                                            douglas.brasher@usdoj.gov

                                            */s/ Andrew Haag*
                                            ANDREW S. HAAG
                                            Assistant United States Attorney
                                            MA Bar No. 705425
                                            601 D Street, N.W.
                                            Washington, DC 20530
                                            (202) 252-7755
                                            Andrew.Haag@usdoj.gov