UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff | Crim. No. 21-214 (JDB) |
| v. | Hon. John D. Bates |
| | **DEFENDANT'S TRIAL BRIEF** |
| JOSEPH LINO PADILLA | |
| also known as "Jose Padilla," | |
| Defendant. | |

### DEFENDANT JOSEPH LINO PADILLA'S TRIAL BRIEF

At the heart of the Government's case against Mr. Padilla are three §111 and one § 1512 charges found in the Second Superseding Indictment. This brief factual narrative is intended to illustrate for the Court and counsel the facts in dispute on these charges.

Without waiving any defense on other Counts, Mr. Padilla states that as to Count 2 of the Second Superseding indictment, wherein he is charged with using a large Trump sign as a battering ram. The Government correctly discerns that Defendant will assert that the Trump sign is appropriately viewed as a free speech expression but was not used by Mr. Padilla as a weapon and Mr. Padilla did not assault or attempt to assault an officer with it. Mr. Padilla had a very brief contact with the sign, during which a protester was shouting instructions into a megaphone regarding erecting the sign. There was no unified intent or common state of mind for those carrying the sign. Mr. Padilla cannot speak to the issue of what others intended, but his intent was to erect the sign as a lawful expression of protest.

Mr. Padilla in fact threw a flagpole (Count 4). The Government correctly discerns that Mr. Padilla will seek to demonstrate that he had no intention of assaulting an officer with the flagpole. Mr. Padilla can be plainly seen to aim with his left hand and throw the pole with his right hand in

a manner consistent with how such items are likely to be aimed and thrown. The flagpole can be seen to travel directly over the head of a protestor who had ducked down in time to avoid getting hit by it. Just previously, this protestor had bent down to pick up a weapon and was advancing on a fallen officer.

Many months ago, the Government was asked to name its alleged victim and now conveniently produces a witness who claims to have been struck by the pole. Defendant objects to the late production of this information and will seek to bar its admission.

The elements of a § 111 charge are well described in U.S. v. Arrington, 309 F.3d 40, (2002):

> We begin with § 111(a). As the words of that subsection make clear, to violate its proscription a defendant must: (1) forcibly; (2) assault, resist, oppose, impede, intimidate, or interfere with; (3) a designated federal officer[6]; (4) while engaged in or on account of the performance of official duties. In addition, the defendant must have: (5) the "intent to do the acts" specified in the subsection. *United States v. Kleinbart,* 27 F.3d 586, 592 (D.C.Cir.1994) (quoting *United States v. Feola,* 420 U.S. 671, 686, 95 S.Ct. 1255, 1264-65, 43 L.Ed.2d 541 (1975)). Finally, as we indicated in *United States v. Heid,* 904 F.2d 69, 71 (D.C.Cir.1990), the adverb "forcibly" in the first element of the offense modifies each of the prohibited acts specified in the second element: that is, a defendant does not violate the statute unless he *forcibly* assaults or *forcibly* resists or *forcibly* opposes, etc. As the parties agreed at oral argument, so far all of this is common ground between them.
>
> We turn next to the elements of § 111(b), and here, too, find some common ground. Again, the statutory language makes clear that, to qualify under this subsection, the defendant must: (1) use a deadly or dangerous weapon[7]; (2) in the commission of any of the acts described in the prior subsection. In addition, although the language merely states that the defendant must "use[]" the weapon, the government agrees — as do we — that: (3) the defendant must use the weapon intentionally. *See* Appellee's Br. at 26. As the Supreme Court stated in *United States v. Feola,* "in order to incur criminal liability under § 111 an actor must entertain ... the

> criminal intent to do the acts therein specified," 420 U.S. at 686, 95 S.Ct. at 1264-65, and the act specified in § 111(b) is the use of a deadly weapon. Accordingly, intent to use the weapon is a necessary element, and a defendant who does so purely by accident does not come within the scope of § 111(b).

The charges brought under 18 USC 111 are general intent crimes. U.S. v Torres-Perez, 99 F.3d 1148 (9th Cir., 1996). The Government does not need to prove that the defendant was aware that the intended victim was an officer, rather, "in order to incur criminal liability under § 111 an actor must entertain merely the criminal intent to do the acts therein specified" [in the statute]. See U.S. v Fiola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975).

In each of the three § 111 the counts, the indictment alleges all of the statutorily proscribed acts: "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties." The Statute is to be read such that the term "forcibly" qualifies each of the statutory options. *Arrington* @ 44. The specifically proscribed act involves the forcible assaulting, resisting etc. of a § 1114 federal officer who is engaged in the performance of official duties.

While it is not necessary that the Government prove that Mr. Padilla was aware that his intended victim was a federal officer, it is necessary that the intended victim *be* a federal officer.

Count 6 of the Second Superseding Indictment alleges a violation of 18 USC 1512(c)(2). The assertion here is that Mr. Padilla was attempting to corruptly obstruct, influence or impede an official proceeding, specifically the congressional certification of the electoral college vote. In fact, Mr. Padilla was interested in seeing the lawful challenges to the certification proceed. Mr. Padilla was hopeful that members of congress would use the objection process in the manner intended by law. As a result, his position is that he neither attempted nor intended a disruption

of that process.  On the other hand, he did want to make his grievances known to the legislature.  It is clear that Mr. Padilla made several social media statements which are best characterized as bravado.  These statements have been extracted without context by the Government and need to be taken in the context of conversation.

In regard to the necessary element that he acted "corruptly", Mr. Padilla requests that the Court adopt the concurrence definition from Judge Walker in *United States v. Fischer,* No. 22-3038 (DC Circuit) 2023:

> Instead, I would give "corruptly" its long-standing meaning. It requires a defendant to act "with an intent to procure an unlawful benefit either for himself or for some other person." *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting) (cleaned up). The defendant must "not only kn[ow] he was obtaining an 'unlawful benefit,'" it must also be "his 'objective' or 'purpose.'" *Id.* Read that way, "corruptly" makes sense of (c)(2)'s place in the statutory scheme and avoids rendering it a vague and far-reaching criminal provision. Id.

With that exception, The Government's elements appear appropriate.

The remaining counts, while not conceded, are substantially affected by the resolution of the aforementioned points of contention.  There is an ongoing discussion about stipulating to facts no in dispute in order to focus the proofs on points of disagreement.  In light of the late production of materials, Defendant is re-assessing what witnesses will be called.  Defendant expects that his presentation of evidence will take one to two days.


/s/ *Michael J Cronkright*
Attorney for Joseph Padilla